05-1820-cv
Isaacson v. Dow Chemical Co.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2006

(Argued:  June 18, 2007                    Decided: February 22, 2008)

Docket Nos.  05-1820-cv; 05-1509-cv; 05-1693-cv; 05-1694-cv;
05-1695-cv; 05-1698-cv; 05-2450-cv

_____

Joe Isaacson and Phyllis Lisa Isaacson,

*Plaintiffs-Appellants*,

— v. —

Dow Chemical Co., Monsanto Co., Hercules, Inc., Occidental Chemical Corp., Ultramar
Diamond Shamrock Corporation, Maxus Energy Corp., Chemical Land Holdings, Inc., T-H
Agriculture and Nutrition Co., Thompson Hayward Chemical Co., Harcros Chemicals, Inc.,
Uniroyal, Inc., C.D.U. Holding Inc. and Uniroyal Chemical Company,

*Defendants-Appellees.*

_____

J. Michael Twinam,

*Plaintiff-Appellant*,

— v. —

Dow Chemical Company, Monsanto Co., American Home Products, Inc., Hercules Incorporated,
Occidental Chemical Corporation, Ultramar Diamond, Chemical Land Holdings, Inc., Maxus
Energy Corp., Harcros Chemicals, Inc., Shamrock Corp., Thompson Hayward Chemical Co., T-
H Agriculture, Uniroyal Chemical Co. and Valero Marketing Corporation,

*Defendants-Appellees.*

_____

Robert S. Bauer and Sandra J. Bauer,

1

*Plaintiffs-Appellants*,

— v. —

Dow Chemical Company, Monsanto Company, Pharmacia Corp., formerly known as Monsanto Co., Solutia, Inc., Hercules, Inc., Thompson Hayward Chemical Co., T-H Agriculture & Nutrition Co., Occidental Chemical Corporation, Occidental Petroleum Corporation, Uniroyal, Inc., C.D.U. Holding, Inc., Uniroyal Chemical Company, Harcros Chemicals, Inc., Ultramar Diamond Shamrock Corporation, Maxus Energy Corp., Tierra Solutions, Inc. and Chemical Land Holdings, Inc.,

*Defendants-Appellees.*

_____

Sheryl A. Walker, Eric C. Walker, A minor, by his Mother and Next Friend on behalf of Sheryl A. Walker, Stephen J. Walker, William Hamilton and Esther M. Hamilton, His wife, Individually and on Behalf of All Others Similarly Situated,

*Plaintiffs-Appellants*,

— v. —

Dow Chemical Company, Monsanto Company, Pharmacia Corp., Solutia, Inc., Hercules Inc., Thompson Hayward Chemical Co., T-H Agriculture & Nutrition Co., Occidental Petroleum Corporation, Occidental Chemical Corp., Uniroyal, Inc., C.D.U. Holding, Inc., Uniroyal Chemical Company, Harcros Chemicals, Inc., Ultramar Diamond Shamrock Corporation, Maxus Energy Corp., Tierra Solutions, Inc., Chemical Land Holdings, Inc., and Valero Energy Corporation, doing business as Valero Marketing and Supply Company,

*Defendants-Appellees*,

Does 1-100,

*Defendants.*

_____

Sherman Clinton Stearns and Dortha Monyene Stearns,

*Plaintiffs-Appellants*,

— v. —

Dow Chemical Company, Hercules, Inc., Occidental Chemical Corp., Thompson Hayward Chemical Co., Elementis Chemicals, Inc., T.H. Agriculture and Nutrition Company, Inc., Maxus

2

Energy Corp., El Paso Gas Transmission Company, Valero Energy Corporation, doing business as Valero Marketing and Supply Company and Uniroyal Chemical Company,

*Defendants-Appellees.*

_____

Charles T. Anderson,

*Plaintiff-Appellant,*

— v. —

Dow Chemical Company, Monsanto Company, Occidental Chemical Corporation, Hercules, Inc. and Valero Energy Corporation, doing business as Valero Marketing and Supply Company,

*Defendants-Appellees,*

Pfizer, Inc., Solutia, Inc., E.I. Dupont de Demours & Co., Elementis Chemicals, Inc., Roche Holdings, Ltd., Harcros Chemicals, Inc., Crompton Corporation, Repsol-YPF, ConocoPhillips Company, Wyeth, Inc., Velsicol Chemical Corporation,

*Defendants.*

_____

Vickey S. Garncarz,

*Plaintiff-Appellant,*

— v. —

Dow Chemical Company, Uniroyal Chemical Corp., and Occidental Chemical Corporation,

*Defendants-Appellees.*

_____

BEFORE:

MINER, SACK, HALL, *Circuit Judges*:

_____

This is one of two opinions addressing appeals from a judgment of the United States

District Court for the Eastern District of New York (Weinstein, J.) dismissing this multidistrict

litigation. This opinion concerns the March 2005 order of the district court denying plaintiffs' motions to remand seven actions to state court. Because we agree that the district court has jurisdiction over these actions under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), the order of the district court is AFFIRMED.

GERSON H. SMOGER, Smoger & Associates, Oakland, California, MARK R. CUKER, Williams Cuker Berezofsky, Philadelphia, Pennsylvania, *for Plaintiffs-Appellants Joe Isaacson and Phillys Lisa Isaacson*.

CHRISTOPHER E. BUCKEY, Shanley, Sweeney, Reilly & Allen, P.C., Albany, New York, *for Plaintiff-Appellant J. Michael Twinam*.

J. MARK ENGLEHART, Beasley, Allen, Crow, Methvin , Portis & Miles, P.C., Montgomery, Alabama *for Plaintiffs-Appellants Robert S. Bauer and Sandra J. Bauer*.

MARK I. BRONSON, Newman, Bronson & Wallis, St. Louis, Missouri, *for Plaintiffs-Appellants Sheryl A. Walker, et al.*

DAVID E. CHERRY, Campbell, Cherry, Harrison, Davis & Dove, P.C., Waco, Texas, *for Plaintiffs-Appellants Sherman Clinton Stearns and Dortha Monyene Stearns*.

JAMES BOANERGES, Cooper, Sprague, Jackson & Boanerges, P.C., Houston, Texas, *for Plaintiffs-Appellants Charles T. Anderson and Vickey S. Garncarz*.

JOAN N. HARROP, Gomien & Harrop, Morris, Illinois, WILLIAM F. FITZPATRICK, Fitzpatrick & Fitzpatrick, Chicago, Illinois, *for Plaintiff-Appellant Vickey S. Garncarz*.

ANDREW L. FREY, CHARLES A. ROTHFELD, Mayer, Brown, Rowe & Maw LLP (Lauren R. Goldman, Christopher J. Houpt, *on the brief*), New York, New York, *for Defendants-Appellees*.

SCOTT L. NELSON, BRIAN WOLFMAN, Public Citizen Litigation Group, Washington, District of Columbia, *for Amicus Curiae Public Citizen, Inc*.

WILLIAM A. ROSSBACH, TIMOTHY M. BECHTOLD, Rossbach Hart Bechtold, P.C., Missoula, Montana, P.B. ONDERDONK, JR., Indianapolis, Indiana (Anne Bloom, Sacramento, California, *on the brief*), *for Amici Curiae Veterans and Military Service Organizations*.

HALL, *Circuit Judge*:

We are asked to determine whether the federal officer removal statute, 28 U.S.C. § 1442(a)(1), allows defendant chemical companies ("Defendants"), who contracted with the Government to produce Agent Orange for military use in the Vietnam War, to remove to federal court actions filed in state court alleging violations of state law in connection with that production. Those plaintiffs who contest federal jurisdiction claim that Defendants do not qualify as "persons" who were "acting under" a federal officer performing acts "under color of federal office" when they committed the challenged acts. We disagree. Defendants have demonstrated that they are "persons" within the meaning of the statute; that they were "acting under" a federal officer; that there is a causal connection between the formulation, manufacturing, packaging, and delivery of Agent Orange and the state prosecutions; and that they have raised a colorable federal defense to the state suits. Moreover, removal in these cases fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed. *See Watson v. Phillip Morris Cos., Inc.*, 127 S. Ct. 2301, 2308 (2007). We therefore affirm the orders of the district court denying the plaintiffs' motions to remand.

**BACKGROUND**

5

Our decision today on the applicability of the federal officer removal statute affects only seven of the sixteen appeals in the present litigation. The plaintiffs in these seven appeals ("Plaintiffs") filed actions in state courts in Illinois, Missouri, New Jersey, New York, and Texas in which they alleged violations of state law, and they asserted that removal would be improper because diversity of citizenship was not complete. *See* Isaacson Compl. (filed in New Jersey); Twinam Compl. (filed in New York); Bauer Compl. (filed in Missouri); Walker Compl. (filed in Missouri); Stearns Compl. (filed in Texas); Anderson Transfer Order (from complaint filed in Texas); Garncarz Compl. (filed in Illinois). Defendants removed all of the cases to the federal district courts in their respective states. After Defendants had removed the cases, the Judicial Panel on Multidistrict Litigation transferred the cases to the United States District Court for the Eastern District of New York.

The district court first dismissed all cases because it found that they were impermissibly attempting to attack collaterally a 1984 class action settlement of claims stemming from harms suffered by veterans as a result of their exposure to Agent Orange. On appeal, this Court, following the Supreme Court's decisions in *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997), and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), vacated the dismissal and remanded because Plaintiffs were not bound by the settlement. *See Stephenson v. Dow Chem. Co.*, 273 F.3d 249, 259–61 (2d Cir. 2001). This Court also held that the district court had subject matter jurisdiction over the claims under the All Writs Act because, although the settlement funds were depleted, the state actions would require interpretation of the scope of the settlement and could disturb the judgment. *See id.* at 256.

The Supreme Court affirmed the judgment vacating the order of dismissal, but it vacated this Court's judgment to the extent that that judgment had affirmed the assertion of removal jurisdiction under the All Writs Act. *See Dow Chem. Co. v. Stephenson*, 539 U.S. 111 (2003). The Supreme Court further directed this Court to reconsider the question of federal jurisdiction over the claims in light of *Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28 (2002). *See Dow Chem. Co.*, 539 U.S. at 112. On remand, we found it "clear in light of *Syngenta* that federal jurisdiction with respect to the Isaacson's claims cannot be grounded on the All Writs Act." *Stephenson v. Dow Chem. Co.*, 346 F.3d 19, 21 (2d Cir. 2003). We therefore remanded the case to the district court for further analysis of the jurisdictional question.

Once back in the district court, Defendants moved for summary judgment, and Plaintiffs moved to remand the actions to state court. The district court granted Defendants' motion for summary judgment, *see In re Agent Orange Prod. Liab. Litig.* (*Agent Orange I*), 304 F. Supp. 2d 404 (E.D.N.Y. 2004), and in a separate memorandum and order, it denied the Isaacson plaintiffs' motion to remand, because it found that jurisdiction was proper pursuant to the federal officer removal statute, *see In re Agent Orange Prod. Liab. Litig.* (*Agent Orange II*), 304 F. Supp. 2d 442 (E.D.N.Y. 2004). In March 2005, the district court denied the remaining motions to remand.

In its jurisdictional ruling, the district court found that Defendants had satisfied the requirements for invoking the federal officer removal statute because: (1) they were "persons" within the meaning of the statute; (2) they were "acting under color of a federal office," because the Government specified the formulation of Agent Orange, was aware that it contained dioxin, knew about the "dioxin 'problem,'" and controlled the method of warning; and (3) the government contractor defense was a colorable federal law defense. *See Agent Orange II*, 304 F.

7

Supp. 2d at 449–51. The court further noted the policy considerations supporting removal: (1) the scattering of Agent Orange claims throughout the state courts would have a chilling effect on manufacturers' acceptance of government contracts; (2) the vagaries of state tort law would deter military procurement; and (3) state courts may circumvent *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), the Supreme Court's preeminent decision on the government contractor defense, if they are unsympathetic to defendants. *Agent Orange II*, 304 F. Supp. 2d at 451. The court observed that its present decision was contrary to its prior decision in *Ryan v. Dow Chemical Co.*, 781 F. Supp. 934 (E.D.N.Y. 1992), where it had held, in virtually identical circumstances and with roughly the same defendants, that the federal officer removal statute did not apply. *See Agent Orange II*, 304 F. Supp. 2d at 445. The court explained its reversal of course by noting that *Ryan* was "no longer persuasive" and that *Ryan*'s holding had been called into question by the Fifth Circuit in *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 392 (5th Cir. 1998). *See Agent Orange II*, 304 F. Supp. 2d at 445.

Plaintiffs appeal the district court's memorandum and order finding removal jurisdiction over their state law claims and the district court's later order denying all motions to remand.

## DISCUSSION

We review de novo the district court's denial of the motions to remand. *See Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 201 (2d Cir. 2001). The federal officer removal statute provides that a case may be removed from state to federal court when the case is brought against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any

8

act under color of such office." 28 U.S.C. § 1442(a)(1). In this case, because they are not federal officers themselves, Defendants must satisfy a three-pronged test to determine whether they may effect removal. First, they must show that they are "person[s]" within the meaning of the statute who "act[ed] under [a federal] officer." *Id.* Second, they must show that they performed the actions for which they are being sued "under color of [federal] office." *Id.* Third, they must raise a colorable federal defense. *Jefferson County v. Acker*, 527 U.S. 423, 431 (1991). We consider each of these requirements in turn.

## I. Corporate Persons and the "Acting Under" Requirement

To satisfy the first requirement, Defendants must show that they were "person[s] acting under" "color of" a federal officer. As an initial matter, we address whether Defendants are "persons."

### A.     Corporate Persons Under the Federal Officer Removal Statute

Section 1442 extends removal power to the United States, its agencies, federal officers, and persons acting under federal officers. Although Plaintiffs argued in their briefs that the defendant chemical companies do not fall under § 1442 because they are not natural persons, another panel of this Court decided, after briefs were due in this case, that corporate persons qualify as "persons" under § 1442. *In re Methyl Tertiary Butyl Esther ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007). Although *MTBE* thus forecloses any argument that corporations are not "persons" under the federal officer removal statute, because that case did not detail its reasoning on this issue, we take this opportunity to explain that result.

9

By statute, we presume that the term "person" includes corporations "unless the context indicates otherwise." 1 U.S.C. § 1. The context in which the term "person" is used in § 1442 gives no indication that corporations are excluded. In fact, § 1442 also lists other non-natural entities, such as the United States and its agencies, which suggests that interpreting "person" to include corporations is consistent with the statutory scheme. The presumption is not irrebuttable, and it can be overcome where the legislative history of the statute under consideration shows that "the normal rule of construction set forth in 1 U.S.C. § 1 would run contrary to the statutory intent." *Toy Mfrs. of Am., Inc. v. Consumer Prod. Safety Comm'n*, 630 F.2d 70, 74 (2d Cir. 1980). As a federal district court in California observed in *Krangel v. Crown*, 791 F. Supp. 1436 (S.D. Cal. 1992), the legislative history of § 1442 reflects only "the absence of express congressional intent to expand the protection of the federal officer removal provision beyond all federal officers to include non-natural entities." *Id.* at 1442. The *Krangel* Court found that the term "person" did not include corporate persons based on this absence. As noted above, however, 1 U.S.C. § 1 establishes a baseline presumption that the term "person" includes corporate persons; the legislative history of § 1442 is relevant only to the extent it reflects a contrary statutory intent. Because the legislative history is devoid of evidence suggesting that Congress intended § 1442 not apply to corporate persons, the ordinary presumption established in 1 U.S.C. § 1 controls.

The 1996 amendment of § 1442 to include agencies does not change the result. Prior to its amendment in 1996, the statute allowed removal in cases against "[a]ny officer of the United States or any agency thereof, or person acting under him, for any act under color of such office." 28 U.S.C. § 1442(a)(1) (1948). As written, the pre-1996 version was unclear on whether it

10

applied only to actions against officers or if it also applied to actions against the United States and its agencies. The amendment clarified that it applied to "[t]he United States," "any agency thereof," "any officer . . . of the United States," "any officer . . . of any agency," and "any person acting under [any such] officer." *Id.* Whether or not the term "person" included corporations was, and remains, an entirely separate issue from whether or not the statute applied to both agencies and agency officers. The 1996 modification with respect to the latter, therefore, cannot be interpreted as reflecting any preexisting understandings with respect to the former.

Based on these considerations, we agree with the panel in *MTBE* that the term "person" includes corporate persons. We also note that in so holding, our Circuit is in agreement with the Fifth Circuit, *see Winters*, 149 F.3d at 398, and several district courts, *see Good v. Armstrong World Indus., Inc.*, 914 F. Supp. 1125, 1127–28 (E.D. Pa. 1996); *Pack v. AC & S, Inc.*, 838 F. Supp. 1099, 1102–03 (D. Md. 1993); *Fung v. Abex Corp.*, 816 F. Supp. 569, 572 (N.D. Cal. 1992).

### B.     The "Acting Under" Requirement

Defendants must show that they were "acting under" a federal officer. The words "acting under" are to be interpreted broadly, and the statute as a whole must be liberally construed. *See Watson*, 127 S. Ct. at 2304–05; *Willingham v. Morgan*, 395 U.S. 402, 407 (1969) ("Th[e] policy [of providing the protection of a federal forum to federal officers] should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).").

In *Watson*, 127 S. Ct. 2301, the Supreme Court expanded on what kind of relationship between the federal officer and the private actor is needed to satisfy the "acting under"

11

requirement.  There, the Court considered whether the Philip Morris Companies were "acting under" a federal officer or agency when they tested and advertised their cigarettes in compliance with the Federal Trade Commission's detailed regulations.  *Id.*  The Court held that they did not qualify as "acting under" a federal officer, reasoning that the "help or assistance necessary to bring a private person within the scope of the [federal officer removal] statute does *not* include simply *complying* with the law."  *Id.* at 2307.  Instead, an entity "act[s] under" a federal officer when it "*assist*[s], or . . . help[s] *carry out*, the duties or tasks of the federal superior."  *Id.*  In other words, there must exist a "special relationship" between the two.  *Id.* at 2310.  For example, close supervision of the private entity by the Government would constitute such a special relationship:

> [T]he private contractor in such cases is helping the Government to produce an item that it needs.  The assistance that private contractors provide federal officers goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks.  In the context of [*Winters*, 149 F.3d 387], for example, Dow Chemical fulfilled the terms of a contractual agreement by providing the Government with a product that it used to help conduct a war.  Moreover, at least arguably, Dow performed a job that, in the absence of a contract with a private firm, the Government itself would have had to perform.

*Id.* at 2308.

Similarly, in this case, Defendants contracted with the Government to provide a product that the Government was using during war—a product that, in the absence of Defendants, the Government would have had to produce itself.  Unlike the tobacco companies in *Watson*, Defendants received delegated authority; they were not simply regulated by federal law. Through their contracts with the Government to produce Agent Orange, the chemical companies "assist[ed]" and "help[ed] carry out[] the duties or tasks of" officers at the Department of

12

Defense. *See id.* at 2307. Defendants thus had the "special relationship" with the Government required by the "acting under" prong.

## II. "Under Color of" Federal Office

The second prong requires Defendants to show that the acts complained of—that is, producing dioxin through the manufacturing of Agent Orange— were taken "under color of [federal] office." 28 U.S.C. § 1442(a)(1). Over time, this second prong has come to be known as the causation requirement. *See Maryland v. Soper (No. 1)*, 270 U.S. 9, 33 (1926). To satisfy this requirement as applied to a federal officer, "[i]t must appear that the prosecution of him for whatever offense has arisen out of the acts done by him under color of federal authority and in enforcement of federal law, and he must by direct averment exclude the possibility that it was based on acts or conduct of his, not justified by his federal duty." *Id.* at 33. The hurdle erected by this requirement is quite low, as "[t]he statute does not require that the prosecution must be for the very acts which the officer admits to have been done by him under federal authority." *Id.* Rather, "[i]t is enough that his acts or his presence at the place in performance of his official duty constitute the basis, though mistaken or false, of the state prosecution." *Id.* Translated to non-governmental corporate defendants, such entities must demonstrate that the acts for which they are being sued—here, the production of dioxin in Agent Orange—occurred *because of* what they were asked to do by the Government. We credit Defendants' theory of the case when determining whether a causal connection exists. *Jefferson County v. Acker*, 527 U.S. 423, 432 (1999).

We agree with the district court that the "acting under" prong is satisfied here. To show causation, Defendants must only establish that the act that is the subject of Plaintiffs' attack (here, the production of the byproduct dioxin) occurred *while* Defendants were performing their official duties. *See Willingham*, 395 U.S. at 409; *see also Soper*, 270 U.S. at 33. Defendants have made the required showing. According to their theory of the case, the Government knew that Agent Orange contained dioxin, and the Government controlled the method of formulation. The action that Plaintiffs challenge, the production of dioxin, naturally would have occurred during the performance of these government-specified duties. And even if Plaintiffs were to prove that the dioxin contamination occurred because of an act not specifically contemplated by the government contract, it is enough that the contracts gave rise to the contamination. Indeed, whether the challenged act was outside the scope of Defendants' official duties, or whether it was specifically directed by the federal Government, is one for the federal—not state—courts to answer. *See Willingham*, 395 U.S. at 409.

Plaintiffs' arguments to the contrary are unpersuasive. They first claim that Agent Orange was an off-the-shelf product and, therefore, could not have been manufactured under color of federal office. As we point out in our companion opinion, however, commercially available products did not contain the Agent Orange herbicides in a concentration as high as that found in Agent Orange. *See In re "Agent Orange" Prod. Liab. Litig.*, — F.3d — (2008). Plaintiffs' off-the-shelf argument thus fails.

Plaintiffs also suggest that the production of Agent Orange was not under color of federal office because Defendants voluntarily bid for the government contracts under which they produced Agent Orange. We find no authority for the suggestion that a voluntary relationship

14

somehow voids the application of the removal statute.  To require the relationship to have been not only "special" but also coerced makes little sense in light of the statute's purpose, and it is particularly strange when applied to natural persons who are acting under a federal officer—all of whom, we would trust, are doing so voluntarily.

In light of the broad interpretation that we must afford the requirement that there be a causal connection between Defendants' federal duties and the conduct for which they are being sued, Defendants have satisfied the "acting under" prong of the statute.

### III.  Colorable Federal Defense

Finally, Defendants must raise a colorable federal defense.  *Jefferson County*, 527 U.S. at 431; *Mesa v. California*, 489 U.S. 121, 132–34 (1989).  The district court found that Defendants had raised a colorable government contractor defense.  *Agent Orange II*, 304 F. Supp. 2d at 450.  As described more fully in our companion opinion, the government contractor defense protects a government contractor from liability under state tort law when the Government approved the product's general design, the product conformed to that design, and the contractor warned the Government of the risks of the product.  *See In re "Agent Orange" Prod. Liab. Litig.*, — F.3d — (2008).

Courts have imposed few limitations on what qualifies as a colorable federal defense.  At its core, the defense prong requires that the defendant raise a claim that is "defensive" and "based in federal law."  *Mesa*, 489 U.S. at 129–30.  More specifically, such defense must "aris[e] out of [the party's] official duties."  *Arizona v. Manypenny*, 451 U.S. 232, 241 (1981).  Given that the removal statute more generally is "not 'narrow' or 'limited'" and that one of its purposes

15

is "to have such defenses litigated in the federal courts," the federal defense requirement is satisfied in "all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law." *Willingham*, 395 U.S. at 406–07. To be "colorable," the defense need not be "clearly sustainable," as the purpose of the statute is to secure that the validity of the defense will be tried in federal court. *Id.* at 407.

The government contractor defense, which is a creature of federal common law and serves to protect the interests of the Government rather than the contractor defendant, *see In re "Agent Orange" Prod. Liab. Litig.*, — F.3d — (2008), is "defensive" and "federal," *Mesa*, 489 U.S. at 129–30. Moreover, as asserted by Defendants in this case, the defense clearly "ar[ose] out of [Defendants'] duty" pursuant to their contractual relationship with the federal Government. *Willingham,* 395 U.S. at 407; *see also Manypenny*, 451 U.S. at 241. And as found by the district court, Defendants' assertions satisfy the particular requirements of the defense. *Agent Orange II*, 304 F. Supp. 2d at 450.

Plaintiffs object, however, based on an argument that (1) only "official immunity defenses" qualify as "colorable federal defenses," and (2) the government contractor defense is not an "official immunity defense" and, therefore, cannot satisfy the federal defense requirement. Contrary to Plaintiffs' claims, we find no support for the proposition that only "official immunity defenses" satisfy the "colorable federal defense" requirement. Although *Willingham* states that "one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court," 395 U.S. at 407, the Court proffers official immunity as only one reason for removal; it does not limit removal to situations that involve official immunity. Furthermore, in *Mesa*, the Supreme Court confirms that in *Cleveland, Columbus & Cincinnati.*

16

*R.R. v. McClung*, 119 U.S. 454 (1886), the defendant, a federal customs collector being sued for violation of his federal duty, satisfied the colorable federal defense requirement, not by asserting official immunity, but by defending on the basis that federal law did not impose any such duty. *Mesa*, 489 U.S. at 129–30. Compliance with federal law, therefore, provides a colorable federal defense under some circumstances, but it is not coterminous with an immunity defense.

Because we find that a defense need not be an immunity defense to qualify as a colorable federal defense under the removal statute, we need not decide here whether the government contractor defense is an immunity defense—an issue on which courts have disagreed. *Compare Murray v. Northrop Grumman Info. Techs., Inc.*, 444 F.3d 169, 175 (2d Cir. 2006) (citing *Boyle* as analogous to the holding that a private contractor administering a congressional job training program for Irish nationals was entitled to official immunity from state tort liability), *Densberger v. United Tech. Corp.*, 297 F.3d 66, 75 (2d Cir. 2002) (noting that *Boyle* "extended the immunity afforded to the federal government's discretionary functions under the Federal Tort Claims Act to government contractors"), *and Kerstetter v. Pac. Scientific Co.*, 210 F.3d 431, 435 (5th Cir. 2000) ("Government contractor immunity is derived from the government's immunity from suit where the performance of a discretionary function is at issue."), *with United States ex rel. Ali v. Daniel, Mann, Johnson & Mendenhall*, 355 F.3d 1140, 1147 (9th Cir. 2004) ("[T]he government contractor defense does not confer sovereign immunity on contractors."), *and In re Joint E. & S. Dist. N.Y. Asbestos Litig. (Grispo v. Eagle-Picher Indus., Inc.)*, 897 F.2d 626, 631 (2d Cir. 1990) (noting that *Boyle* did not grant military contractors "blanket immunity," but rather "hinge[d] the military contractor defense upon the military contractor's having followed a government-approved requirement contrary to a state tort law duty").

17

*   *   *

The district court properly found that it had jurisdiction over the present actions under the federal officer removal statute. Defendants are "persons" within the meaning of the statute who are entitled to stand in the shoes of a federal officer because of the "special relationship" they shared with the Government. The production of dioxin occurred "under color of [federal] office" because it occurred while Defendants were performing their "official" duty, pursuant to government contract, of manufacturing Agent Orange. Finally, Defendants have adequately raised the government contractor defense, which qualifies as a colorable federal defense.

**CONCLUSION**

The order of the District Court denying Defendants' motions to remand is AFFIRMED.