Margaret **PANTALONE**,
et al., **Plaintiffs**

v.

**AURORA PUMP CO.,** et
al., **Defendants.**

Civil No. 3:07cv1336 (JBA).

United States District Court,
D. Connecticut.

Sept. 18, 2008.

Brian P. Kenney, Christopher Meisenkothen, Lindalea P. Ludwick, Early Ludwick & Sweeney LLC, New Haven, CT, for Plaintiff.

John J. Robinson, McCarter & English–Htfd, Jason Kirk Henderson, Kenneth R. Neal, Danaher, Tedford, Lagnese & Neal, Deborah Etlinger, Gintare Tijunelis Grenier, Wolf Horowitz & Etlinger LLC, John

J. Bogdanski, Howd & Ludorf, Richard M. Dighello, Jr., Updike, Kelly & Spellacy, P.C., William E. Murray, Edwards Angell Palmer & Dodge–Htfd–CT, Hartford, CT, Michael J. Smith, Bonner Kiernan Trebach & Crociata, LLP–MA, Charles K. Mone, Campbell, Campbell, Edwards & Conroy, P.C.–MA, George W. Clark, Matthew Jason Zamaloff, Cetrulo & Capone–Boston, Robert Stuart Ludlum, Pierce, Davis & Perritano, LLP, Bryna Rosen Misiura, Michael D. Simons, The Governo Law Firm LLC, Boston, MA, Charles W. Pieterse, Whitman, Breed, Abbott & Morgan–CT, Greenwich, CT, Robert W. Allen, Tyler, Cooper & Alcorn, LLP–NH, New Haven, CT, Kevin C. McCaffrey Cullen & Dykman, LLP, Brooklyn, NY, Anthony J. Iaconis, Diserio, Martin, O'Connor & Castiglioni, Stamford, CT, Peter J. Ponziani, Marc S. Edrich, Timothy S. Jajliardo, Litchfield Cavo, Avon, CT, James R. Oswald, Mark O. Denehy, Adler, Pollock & Sheehan, Inc., Providence, RI, Geoffrey Lane Squitiero, Maher & Murtha, Bridgeport, CT, for Defendants.

## RULING ON PLAINTIFF'S MOTION TO REMAND

JANET BOND ARTERTON, District Judge.

Plaintiff Margaret Pantalone filed this state-law products-liability action in Connecticut Superior Court on July 17, 2003, alleging that her husband Thomas Pantalone ("Pantalone") was injured and ultimately died as a result of his earlier exposure to asbestos materials. Plaintiff's complaint alleges, among other things, that Pantalone developed malignant mesothelioma due to his contact with asbestos-containing products manufactured by Defendant Buffalo Pumps, Inc. ("Buffalo Pumps") while serving in the U.S. Navy between 1951 and 1956. (Compl. [Doc. # 1] ¶ 5.)

On September 4, 2007, Buffalo Pumps removed the case pursuant to the federal-officer-removal statute, 28 U.S.C. § 1442(a)(1). One week later, Plaintiff moved to remand the case to state court, arguing that Buffalo Pumps had not satisfied the requirements for removal under § 1442(a)(1) and that the removal was untimely. Based on the grounds Buffalo Pumps provided in its notice of removal, the Court concludes that the grounds for federal-officer removal as explained in *Isaacson v. Dow Chemical Co.,* 517 F.3d 129, 138 (2d Cir.2008), have been met. However, Buffalo Pumps has failed to carry its additional burden of establishing that it could not have intelligently ascertained the case's removability before August 3, 2007. Consequently, because removal was untimely pursuant to 28 U.S.C. § 1446(b), Plaintiff's Motion to Remand [Doc. # 14] is granted.

## I. Relevant Background

Plaintiff's complaint alleges, in pertinent part, that Pantalone "was exposed to various asbestos containing products while in the U.S. Navy, at various jobsites, at various times during the years 1951–1956 and while working in Connecticut as a Maintenance Mechanic at various jobsites, at various times during the years 1956–1987." (Compl. ¶ 5.) Plaintiff further alleges that Pantalone's exposure to asbestos during this time was the result of his contact with products manufactured or supplied by each of the Defendants (including Buffalo Pumps), thus giving rise to their liability under Connecticut law. (*Id.* ¶¶ 3, 6–11.)

After the case had been pending for more than four years, Plaintiff disclosed the report of its expert, Captain R. Bruce Woodruff, on August 3, 2007. In this report, Captain Woodruff outlined the details of Pantalone's Navy service, including that he worked on the U.S.S. *Fulton,* on the U.S.S. *Dortch,* and at the New London

submarine base. (Woodruff Rep. at 4–8.) Following this disclosure, Buffalo Pumps then removed the case on the basis of the following assertions:

5. Buffalo Pumps manufactured and supplied pumps for Navy ships pursuant to vessel-specific contracts between it and the United States Navy.

6. Buffalo Pumps is a "person" within the meaning of 28 U.S.C. § 1442(a).

7. As evidenced by the Kraft Affidavit, the Navy issued specifications and other technical documentation identified in applicable contract documents that controlled the pumps' design and construction and specified the materials to be used, including asbestos gaskets. The Navy retained ultimate decision-making authority with respect to the design and final approval of all Buffalo Pumps['s] pumps constructed for Navy vessels. All pumps supplied by Buffalo Pumps to the Navy were manufactured under reasonably precise specifications and other technical documentation dictated by the United States Government and identified in applicable contract documents.

8. The Navy's specifications also covered the nature of any communication affixed to pumps or equipment supplied to the Navy. As such, Buffalo Pumps was required to submit for approval and acceptance by the federal government drafts of any manuals, drawings, or other written materials required to be provided with regard to pumps it manufactured for the Navy. Buffalo Pumps would not have been permitted … to attach any type of warning or cautionary statement not required and approved by the Navy, including any statements related to asbestos, without prior discussion, approval and acceptance by the Navy.

9. Therefore, Buffalo Pumps was, at all times, acting under the direct and detailed authority and control of an officer of the United States Navy in carrying out its contract for the manufacture of pumps used on United States Naval vessels.

(Not. Removal at 3–4 (citations omitted).) Consequently, Buffalo Pumps contended, it had a colorable basis for asserting the "government contractor" defense recognized in *Boyle v. United Technologies Corp.*, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988).

To bolster its grounds for removal under § 1442(a)(1), Buffalo Pumps incorporated into its notice the affidavits of Roger B. Horne, Jr., a retired Rear Admiral of the U.S. Navy; Martin K. Kraft, Buffalo Pumps's production manager; and Dr. Samuel A. Forman, a specialist in preventative and occupational medicine, former Navy doctor, and expert in asbestos-related diseases. Admiral Horne "attest[ed] to the level of supervision, direction[,] and control exercised by the U.S. Navy over the design and manufacture [of pumps] intended for installation on Navy vessels." (Horne Aff. ¶ 4.) "In sum," Admiral Horne averred, "all equipment, including Buffalo Pumps'[s] pumps, manufactured for use aboard Navy vessels, including the [*Dortch* and *Fulton* ], were manufactured pursuant to Navy specifications under close supervision by personnel employed by the Navy, and approved for installation aboard these vessels by the Navy and its designated officers." (*Id.* ¶ 16.) This close relationship between Buffalo Pumps and the Navy was confirmed by Kraft, who in his affidavit described the details of the design and manufacturing process from Buffalo Pumps's perspective. According to Kraft, the Navy's supervision of Buffalo Pumps's contract work was comprehensive: "[a]ll pumps supplied by Buffalo Pumps to the Navy were built in accordance with the Navy specifications or other technical documentation identified in applicable contract documents." (Kraft Aff. ¶ 10.) In the third affidavit, Dr. Forman provided general background on asbestos-related

occupational disease and on his research showing that the Navy was aware, at least three decades before Pantalone's service, "that asbestos exposure was a potential health hazard." (Forman Aff. ¶ 9.)

These affidavits, Buffalo Pumps maintains, provide sufficient support for its grounds for removal pursuant to § 1442(a)(1). Plaintiff disagrees in nearly every respect and further argues that removal was untimely under § 1446(b) because Buffalo Pumps filed its notice of removal more than thirty days after the case's removability became apparent. The Court will proceed by first looking to whether Buffalo Pumps has met the prerequisites for federal-officer removal and then determining whether the removal was timely.

## II. Removal Pursuant to § 1442(a)(1)

 A statute that traces its history to the War of 1812, § 1442(a)(1) "permits a defendant to remove to federal court a state court action brought against the 'United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office.'" *Watson v. Philip Morris Cos.,* —— U.S. ——, 127 S.Ct. 2301, 2303–05, 168 L.Ed.2d 42 (2007) (quoting 28 U.S.C. § 1442(a)(1)). With this removal mechanism, the statute serves to protect federal officers acting within their authority from being "arrested and brought to trial in a State court, for an alleged offense against the law of the State, yet warranted by the Federal authority they possess." *Willingham v. Morgan,* 395 U.S. 402, 405, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969) (quoting *Tenn. v. Davis,* 100 U.S. 257, 263, 25 L.Ed. 648 (1880)). This removal privilege extends to "persons who, through contractual relationships with the Government,

perform jobs that the Government otherwise would have performed." *Isaacson,* 517 F.3d at 133. Such defendants who seek to remove pursuant to § 1442(a)(1) despite not themselves being federal officers must demonstrate three things:

> First, they must show that they are persons within the meaning of the statute who acted under a federal officer. Second, they must show that they performed the actions for which they are being sued under color of federal office. Third, they must raise a colorable federal defense.

*Id.* at 135 (citations and quotation marks omitted).

 Unlike other removal provisions, § 1442 is not to be construed narrowly, but instead with sufficient breadth to effectuate its purpose. *Watson,* 127 S.Ct. at 2304–05; *Ariz. v. Manypenny,* 451 U.S. 232, 242, 101 S.Ct. 1657, 68 L.Ed.2d 58 (1981); *Willingham,* 395 U.S. at 406–07, 89 S.Ct. 1813. Although there must of course be a factual basis for removal, *Watson,* 127 S.Ct. at 2309 (rejecting defendant's arguments as unsupported by fact or law), a defendant's showing need not go beyond adequately supported assertions, *Isaacson,* 517 F.3d at 139. The propriety of removal under the statute should be considered at the time of removal by "look[ing] only to the jurisdictional facts alleged in the Notice[ ] of Removal." *In re Methyl Tertiary Butyl Ether Prods. Liabl. Litig.* ("*MTBE*"), 488 F.3d 112, 124 (2d Cir. 2007); *Vera v. Saks & Co.,* 335 F.3d 109, 116 n. 2 (2d Cir.2003) (citing *Pullman Co. v. Jenkins,* 305 U.S. 534, 537, 59 S.Ct. 347, 83 L.Ed. 334 (1939)); *Whitaker v. Am. Telecasting, Inc.,* 261 F.3d 196, 205 (2d Cir.2001).

In light of these principles, the Court will assess the three necessary elements for removal under § 1442(a)(1) in turn.[1]

---

1. The interplay between state-law asbestos litigation and the federal-officer-removal statute

## A. "Acting Under" a Federal Officer

■ To be considered "acting under" a federal officer, a "person"—which is a term that "includes corporate persons," *id.* at 136—must have done more than merely complied with a federal legal or regulatory scheme. *Watson,* 127 S.Ct. at 2307. Rather, "an entity 'acts under' a federal officer when it 'assists, or helps carry out, the duties or tasks of the federal superior.'" *Isaacson,* 517 F.3d at 137 (quoting *Watson*). One example of this necessary "special relationship" is where there is "close supervision of the private entity by the Government." *Id.* The *Isaacson* panel thus concluded that the removing defendants had satisfied this first prong:

> Unlike the tobacco companies in *Watson,* Defendants received delegated authority; they were not simply regulated by federal law. Through their contracts with the Government to produce Agent Orange, the chemical companies "assisted" and "helped carry out the duties or tasks of" officers at the Department of Defense. Defendants thus had the "special relationship" with the Government required by the "acting under" prong.

*Id.* (citation omitted).

The Plaintiff does not quarrel with the proposition that Buffalo Pumps was, at all relevant times, a person acting under a federal officer. The notice of removal and supporting affidavits establish that Buffalo Pumps manufactured pumps pursuant to contracts with, and according to specifications provided by, the Navy. Thus, Buffalo Pumps and the Navy had the kind of "special relationship" that § 1442(a)(1) requires.

## B. "Under Color of" Federal Office

■ The second prerequisite for § 1442(a)(1) removal, that a defendant "act[ed] under color of [federal] office," is "known as the causation requirement." *Isaacson,* 517 F.3d at 137. This is not a difficult burden to meet: "[t]o show causation, [non-governmental corporate defendants] must only establish that the act that is the subject of [a plaintiff's] attack ... occurred *while* Defendants were performing their official duties." *Id.* at 137–38. In *Isaacson,* the Second Circuit found that the defendants made the necessary showing based on assertions that the federal government was aware of the nature of Agent Orange and strictly controlled the production of its components. *Id.* at 138. Thus, the causation requirement was satisfied because the defendants' actions alleged to give rise to liability "occurred during the performance of these government-specified duties." *Id.*

■ The same conclusion follows here. In their affidavits, Admiral Horne and Kraft explained that the Navy retained ultimate decision-making authority with respect to the design and final approval of all pumps that Buffalo Pumps manufactured for Navy vessels, including the products implicated by Plaintiff's claims. Because the action challenged by Plaintiff—

---

has been the subject of many decisions in the last few years, including three by judges in this District. *See Contois v. Able Indus. Inc.,* 523 F.Supp.2d 155 (D.Conn.2007) (finding removal timely and substantively proper); *Machnik v. Buffalo Pumps, Inc.,* 506 F.Supp.2d 99 (D.Conn.2007) (denying plaintiff's motion to remand); *Fortier v. AMPCO–Pittsburgh Corp.,* No. 07–05, 2007 WL 735703 (D.Conn. Mar. 7, 2007) (remanding the case so that a state court may "appropriately" resolve the open issue of defendants ability to include warning labels). These three rulings, which the parties have discussed (among other cases) at length, are not easily reconcilable, but were issued without the benefit of the Second Circuit's more recent opinion in *Isaacson* examining the terms of § 1442(a)(1). Thus, the Court's analysis here will follow the course taken by the Court of Appeals in *Isaacson.*

namely, the use of hazardous asbestos—occurred while Buffalo Pumps was carrying out its Navy-directed duties, the necessary causal requirement is met.

Plaintiff disputes this conclusion, offering its own evidence that Buffalo Pumps could have gone further than the Navy's specifications and included asbestos warnings on its pumps. *Isaacson* is particularly helpful on this point in two respects. First, citing *Jefferson County v. Acker*, 527 U.S. 423, 432, 119 S.Ct. 2069, 144 L.Ed.2d 408 (1999), the *Isaacson* panel explained that a court must "credit [the] Defendants' theory of the case when determining whether a causal connection exists." 517 F.3d at 137. Interpreting a related provision of § 1442(a)(3), the Supreme Court in *Jefferson County* was more explicit:

> To choose between those readings of the [county ordinance giving rise to the asserted federal defense] is to decide the merits of this case. Just as requiring a "clearly sustainable defense" rather than a colorable defense would defeat the purpose of the removal statute, so would demanding an airtight case on the merits in order to show the required causal connection. Accordingly, we credit the [defendants'] theory of the case for purposes of both elements of our jurisdictional inquiry and conclude that the [defendants] have made an adequate threshold showing that the suit is "for an act under color of office."

527 U.S. at 432, 119 S.Ct. 2069. Second, *Isaacson* makes clear that, for the purposes of assessing removability, it would make no difference if Buffalo Pumps had been able to issue more stringent asbestos warnings on its Navy pumps. Addressing the injuries allegedly caused by exposure to Agent Orange, the panel emphasized that "even if Plaintiffs were to prove that the dioxin contamination occurred because of an act not specifically contemplated by the government contract, it is enough that

the contracts gave rise to the contamination." 517 F.3d at 138. In short, Buffalo Pumps's "theory of the case" shows the causal link between the challenged action and the governmental supervision, which is all that is required at the removal stage in the litigation.

### C. Colorable Federal Defense

■ Finally, a defendant can remove under the statute only if it raises a colorable federal defense. Buffalo Pumps has raised the "government contractor" defense recognized in *Boyle*, which "protects a government contractor from liability under state tort law when the Government approved the product's general design, the product conformed to that design, and the contractor warned the Government of the risks of the product." *Isaacson*, 517 F.3d at 138; *see also In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 88 (2d Cir.2008). Importantly, to permit removal under § 1442(a)(1), such a federal defense need not be one that will ultimately prevail. *Willingham v. Morgan*, 395 U.S. 402, 407, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969). Furthermore, here, too, it is enough to rely on a defendant's assertions of the basis for the defense in the notice of removal and supporting documents. *Isaacson*, 517 F.3d at 139.

■ Plaintiff contends that Buffalo Pumps has not provided a sufficient basis for asserting the government-contractor defense because there is no evidence that the Navy actually prohibited warnings about the health hazards posed by asbestos materials. As above, Plaintiff cites her own proffered evidence purportedly showing that Navy regulations would have permitted such asbestos warnings. However, this dispute goes to the heart of the case, and is a matter which must be determined at trial and not at this preliminary stage. Through the factual assertions in its notice of removal and supporting affidavits, Buf-

falo Pumps has met the three elements of the government-contractor defense: (1) the Navy "approved reasonably precise specifications" for the pumps supplied by Buffalo Pumps (Horne Aff. ¶¶ 4–5, 9–13, 15–16); (2) these pumps "conformed" to the Navy's detailed and precise specifications (Kraft Aff. ¶¶ 4–6, 10–12); and (3) the Navy was already aware of the asbestos-related "dangers in the use of the equipment" supplied by Buffalo Pumps (Forman Aff. ¶¶ 8–9). *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d at 88 (quoting *Boyle*, 487 U.S. at 512, 108 S.Ct. 2510). This demonstrates that Buffalo Pumps has a colorable basis for asserting the defense, thus satisfying its burden under the removal analysis.

Therefore, because Buffalo Pumps's factual assertions support its claim that it has met the statutory requirements and has a colorable federal defense, the Court concludes that removal was proper under § 1442(a)(1). The remaining issue, then, is whether removal was also timely.

### III. Timeliness of Removal

■ Pursuant to 28 U.S.C. § 1446(b), a case originally filed in state court can only be removed within thirty days after the defendant receives a copy of the initial pleading. While this pleading triggering removal is often the plaintiff's complaint, other papers which describe "what the suit is about" can qualify. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 352, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999). The statute further provides:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

§ 1446(b). Although a defendant must "apply a reasonable amount of intelligence in ascertaining removability," it need not "look beyond the initial pleading for facts giving rise to removability." *Whitaker*, 261 F.3d at 205–06. Thus, the question is: When could Buffalo Pumps reasonably ascertain that this case was removable?

■ Buffalo Pumps contends that the factual basis for invoking § 1442(a)(1) was not apparent until August 2007, when Captain Woodruff's report disclosed the details of Pantalone's Navy service. Thus, Buffalo Pumps argues, the second paragraph of § 1446(b) applies here because this expert report, not Plaintiff's complaint, was the first "paper" demonstrating removability. Plaintiff disagrees with this view of the case, maintaining that the original complaint adequately put the many Defendants "on notice that [the] claims were based, in part, on Mr. Pantalone's exposure to asbestos while in the Navy." (Pl.'s Mem. Supp. Remand [Doc. # 15] at 4.) Alternatively, Plaintiff claims that the discovery responses Buffalo Pumps received on April 9, 2007—which stated that Pantalone worked as a screw machine operator on the *Fulton* and the *Dortch*—erased any doubts about the case's removability under § 1442(a)(1). According to this view, Buffalo Pumps's removal in September 2007 was far too late.

In its opposition brief, Buffalo Pumps described what the complaint lacked that would have otherwise made removability apparent:

> Absent from the Complaint was any indication as to [ ] whether Plaintiff's alleged exposure in connection with Buffalo Pumps'[s] product[s] occurred while Plaintiff served in the Navy, while in his post-Naval employment, or both. Nor did the complaint address any additional details regarding his alleged exposure to asbestos from Buffalo Pumps equip-

ment[ ] (including such critical information as how, where and when such exposure occurred).

(Def.'s Opp'n Remand [Doc. # 41] at 2.) Buffalo Pumps also cited similar deficiencies in the April 2007 interrogatory answers:

> [A]s with the Complaint, these minimalist discovery responses *again* failed to address the critical issues of whether Plaintiff's alleged exposure to Buffalo Pumps'[s] products stemmed from his Naval service, his post-Naval employment, or both. Nor did the discovery provide any additional details regarding his alleged exposure to Buffalo Pumps products (including information as to how, where and when such exposure occurred).

(*Id.* at 3.) Thus, only with the disclosure of Captain Woodruff' s report in August 2007 was Buffalo Pumps made aware of this "critical" missing information:

> This paper marked the first time in this litigation that Plaintiffs alleged that Mr. Pantalone's exposure to asbestos from his work on or around Buffalo Pumps [products] was specifically linked to his service in the Navy on the [*Dortch* and *Fulton* ], and it provided for the first time the details of such alleged exposure.

(*Id.*) Counsel for Buffalo Pumps emphasized at oral argument that this information is essential to the removal determination because Buffalo Pumps supplied its products to both the government and private companies. Buffalo Pumps argues that, without clarification by the Plaintiff, it could not ascertain the source of Pantalone's alleged exposure to asbestos materials, despite the fact that Plaintiff "could have easily stated, in either the Complaint

or the answers to interrogatories, that [Pantalone's] alleged exposure to Buffalo Pumps [products] occurred during his Navy service, and not during his post-Navy career at Devon Powerhouse (or during both)." (*Id.* at 5–6.) [2]

Contrary to Buffalo Pumps's characterization, however, Plaintiff did in fact allege in her complaint that Pantalone was exposed to asbestos materials supplied by Buffalo Pumps during his Navy service. In Count I, Plaintiff alleged, in relevant part, that Pantalone "was exposed to various asbestos containing products while in the U.S. Navy, at various jobsites, at various times during the years 1951–1956"; that the many Defendants (including Buffalo Pumps) supplied these "asbestos-containing products to [Pantalone's] employer(s)"; that Pantalone "was forced to come into contact with" these materials "as part of [his] employment"; that the Defendants' products "reached [Pantalone's employer(s) ] without any substantial change in their condition"; that the Defendants knew of the health dangers posed by asbestos products and yet failed to provide proper warnings; that Pantalone was severely injured as a result of this exposure; and that each Defendant is therefore liable under Connecticut law for such tortious acts. (Compl. ¶¶ 3, 5, 7–8, 10–13, 17–20.) Thus, the information Buffalo Pumps claims was available only later, following Captain Woodruff's report—whether Pantalone was exposed during his Navy service, during his civilian employment, or both—was already alleged in the complaint. Accordingly, once it was served with the complaint in 2003, Buffalo Pumps was on notice that it was being sued, in part, based on the products delivered pursuant to its Navy contracts.

---

**2.** Contradicting itself, Buffalo Pumps conceded in the same brief that, in the discovery responses, Plaintiff provided what it termed "a sliver of additional information": "that

while in the Navy, [Pantalone] was exposed while serving as a screw machine operator on board the [*Dortch* and *Fulton* ]." (Def.'s Opp'n Remand at 4.)

Moreover, Buffalo Pumps's notice of removal was based on no material facts not already available prior to the disclosure of Captain Woodruff' s report. In the notice, Buffalo Pumps does not cite the report other than to state that "[o]n August 3, 2007, Defendant received the preliminary report of plaintiff's expert, R. Bruce Woodruff, a copy of which is annexed as Exhibit 2." (Not. Removal ¶ 2.) Rather than incorporating the details of Pantalone's Navy service which Woodruff described (and which were purportedly critical to the removal determination), Buffalo Pumps instead proffered its factual basis for removal in broad, general terms. According to the notice, Buffalo Pumps had satisfied the statutory requirements for removal during the time relevant to Plaintiff's complaint because *all* pumps it supplied to the Navy—not just those to which Pantalone was allegedly exposed—were designed and manufactured according to the Navy's precise specifications. Admiral Horne used similarly sweeping language and averred that *all* equipment intended for installation on Navy vessels—not just Buffalo Pumps's pumps, and also not just the equipment aboard the *Fulton* and the *Dortch*—was subject to the Navy's close supervision and tight control. The generalized assertions in the Kraft and Forman affidavits were no different, except that they did not cite the facts disclosed in Captain Woodruff's report at all.

In short, other than the brief mention of the particular Navy vessels on which Pantalone served, Buffalo Pumps's grounds for removal are not traceable to the information confirmed and described by Captain Woodruff in his report. Plus, the identification of these two vessels became inconsequential once Buffalo Pumps asserted that all of its equipment bound for any Navy vessel was subject to the same constraints. Therefore, the claim that the Woodruff report was the event which triggered removability is belied by Buffalo Pumps's own submissions.

Returning to the requirements of § 1446(b), Buffalo Pumps's removal was timely only if the first "paper" demonstrating removability was the expert report disclosed in August 2007. Buffalo Pumps has failed to make this showing. In its notice of removal, Buffalo Pumps did not rely on the facts disclosed by Captain Woodruff's report. Rather, the purportedly "critical information" linking Pantalone's asbestos exposure to Buffalo Pumps's Navy contracts was alleged by Plaintiff in her complaint filed in 2003. The only factual information demanded by Buffalo Pumps relating to the details of Pantalone's Navy service and not found in the complaint is irrelevant: Buffalo Pumps based its removal on such broadly generalized facts about its Navy contracts that it makes no difference when and where Pantalone was allegedly exposed to Buffalo Pumps's asbestos-containing products.[3]

Consequently, because Buffalo Pumps has not demonstrated that it could not have reasonably ascertained the case's removability before August 3, 2007, it has not carried its burden of showing that the notice of removal was timely filed pursuant to § 1446(b).

## IV. Conclusion

In summary, Buffalo Pumps properly removed this case under 28 U.S.C. § 1442(a)(1), but failed to do so according

---

**3.** In its briefing and at oral argument, Buffalo Pumps suggested that precisely where on the *Dortch* and *Fulton* Pantalone worked is "particularly pertinent" to Buffalo Pumps's determination of how it may be liable. (Def.'s Opp'n Remand at 6.) But this is an argument which goes to the merits of the case, not removability, and bears no relation to the grounds on which removal was originally based.

to the timeliness provisions of § 1446(b). Accordingly, Plaintiff's Motion to Remand [Doc. # 14] is granted and the Clerk is directed to remand this case to the Judicial District of Fairfield at Bridgeport. Plaintiff's Motion to Vacate Conditional Transfer Order to the MDL [Doc. # 39] is denied as moot.

IT IS SO ORDERED.