**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| NICHOLAS DEFIORE; KEITH QUICK; NEIL ROBINSON; CHRISTOPHER WILLIAMS; SHAWN WHITEHEAD; PAUL MILLS, Jr.; RENE PEREZ; ROBERT HERRING; HOUSTON WILLAMS; ALLEN CAIN; RICHARD LANDRY; WARREN WOODS; ARNOLD ALEXANDER; DANIEL MERCANTON; DAVID WOLDERZAK; JAQUELYN JOUBERT-YOUNG; ABDELRAHIM KHAMIS; CURTIS WATSON; JOSEPH SCOTT; BABATUNDA DOUGLAS; DUSTIN BOYLE; ALFREDO LUIS CRUZ; GEORGE MUNN; TODD DUPONT; JEROME MUNDY; BENTON WILLIAMS, Jr.; EDUARDO ZUNIGA; CHRISTOPHER WARREN; CHRISTOPHER FIELDS, | No. 21-15261 D.C. No. 2:20-cv-01981-APG OPINION |

*Plaintiffs-Appellees*,

v.

SOC LLC, DBA SOC Nevada LLC;
SOC-SMG, INC.; DAY &
ZIMMERMANN, INC.,

　　　　*Defendants-Appellants*.

Appeal from the United States District Court
for the District of Nevada
Andrew Gordon, District Judge, Presiding

Argued and Submitted November 8, 2021
San Francisco, California

Filed October 25, 2023

Before: Daniel P. Collins and Kenneth K. Lee, Circuit
Judges, and M. Miller Baker,[*] International Trade Judge.

Opinion by Judge Baker;
Dissent by Judge Collins

---

[*] The Honorable M. Miller Baker, Judge for the United States Court of
International Trade, sitting by designation.

# SUMMARY[**]

## Federal Officer Removal Statute

The panel reversed the district court's order remanding to state court an action against private contractors providing war-zone security services to the Department of Defense, brought by a group of their employees who guarded bases, equipment, and personnel in Iraq.

The guards alleged that their working conditions violated the contractors' recruiting representations, their employment contracts, and the Theater Wide Internal Security Services II (TWISS II) contract between the contractors and the Department of Defense.

The panel held that the contractors met the limited burden imposed by the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which permits removal of a civil action against "any officer (or any person acting under that officer) of the United States or of any agency thereof . . . for or relating to any act under color of such office." To satisfy this requirement, a removing private entity must show that (a) it is a "person" within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and the plaintiff's claims; and (c) it can assert a colorable federal defense.

There was no dispute that the contractors, as corporations, were "persons" for purposes of § 1442(a)(1).

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the contractors sufficiently pleaded that there was a causal nexus between their actions and the guards' claims. First, the contractors "acted under" a federal officer because, under common-law agency principles, they were independent contractors serving as the government's agents, rather than acting as non-agent service providers. The panel concluded that the TWISS II contract's subordination of the contractors to U.S. military command in the performance of their duties in Iraq sufficed to render them Department of Defense agents. Second, there was a causal connection between the actions of the contractors as agents of the government and the guards' claims because the actions the contractors took which gave rise to the guards' claims resulted from their work for the Department of Defense.

The panel further held that the contractors sufficiently alleged a colorable federal defense of compliance with the federal regulations incorporated into the TWISS II contract. Agreeing with the Fifth Circuit, the panel held that the question was not whether the contractors' asserted federal defense was meritorious, but whether that defense was immaterial and made solely for the purpose of obtaining jurisdiction or was wholly insubstantial and frivolous. The panel remanded the case to the district court for further proceedings.

Dissenting, Judge Collins wrote that the contractors' removal notice failed to adequately plead a colorable federal defense because the removal notice did not allege sufficient facts to support the defense of compliance with the TWISS II contract's incorporation of federal regulations, and this defense applied only to a subset of the guards' claims. Further, the contractors did not satisfy the causal nexus requirements because it is not sufficient only to show

that a defendant contractor is an "agent" of the Government and that, absent that contractual relationship, the plaintiff's claim would never have arisen.

**COUNSEL**

Scott E. Lerner (argued) and Tara M. Lee, White & Case LLP, Washington, D.C.; E. Leif Reid, Lewis Roca Rothgerber Christie LLP, Reno, Nevada; for Defendants-Appellants.

Scott E. Gizer (argued), Early Sullivan Wright Gizer & McRae LLP, Los Angeles, California, for Plaintiffs-Appellees.

**OPINION**

BAKER, International Trade Judge:

Three private contractors providing war-zone security services to the Department of Defense (DOD) appeal a district court order remanding to Nevada state court this suit brought by a group of their employees who guarded DOD bases, equipment, and personnel in Iraq. Because the contractors met the limited burden imposed by the federal officer removal statute, we hold that the remand was erroneous. We therefore reverse.

I

The guards' complaint alleges that the contractors recruited them "under false promises with respect to the

schedule [they] would work" in Iraq. The complaint also alleges that the contractors required that the guards "work in ultra-hazardous conditions in excess of 12 hours per day without meals or rest periods, seven days per week." According to the complaint, these working conditions violated "not only the [contractors' recruiting] representations" and employment contracts, but also the relevant agreement between DOD and the contractors, the Theater Wide Internal Security Services II (TWISS II) contract. The complaint asserts eight state-law claims for relief, including a claim for breach of the TWISS II contract, which the guards allege "was expressly for their benefit."

Invoking the federal officer removal statute, 28 U.S.C. § 1442(a)(1), the contractors timely removed this suit to the district court. Their notice of removal alleges (1) that they are "persons" for purposes of the statute; (2) that the guards' claims "are connected or associated with" the contractors' "official authority" because the contractors were "acting under federal authority by performing security services according to United States military directives" and because the TWISS II contract required the guards to follow "orders . . . issued by the 'Combatant Commander, including those relating to force protection, security, health, [or] safety' "; and (3) that the contractors "expect to [assert] colorable federal defenses, . . . including their compliance with federal regulations" incorporated into the TWISS II contract. Attached to the notice of removal was the guards' complaint.

The guards then moved to remand this action to state court. Ruling from the bench, the district court granted the motion for two separate and independent reasons.

First, the district court reasoned that there was no causal nexus between the guards' "claims and the defendants'

actions that were at the direction of the government" because the TWISS II contract "delegated to the defendants" "specific command and control supervision" of the guards, even though the contract also provided for "some general oversight by the government."

Second, the district court reasoned that even if the contractors could establish such a nexus, "they cannot assert a colorable federal defense." As relevant here, the district court reasoned that although the contractors "claim they have to comply with federal regulations and that gives them a federal defense, . . . the regs that are being cited by the defendants do not provide a defense to the plaintiffs' claims here of fraud or of breach of contract between those two parties, the plaintiffs and the defendants."[1]

The contractors timely appealed.

## II

Insofar as such orders are reviewable, *see* 28 U.S.C. § 1447(d), we review *de novo* a district court's decision to remand a case. *See Lively v. Wild Oats Mkts., Inc.*, 456 F.3d 933, 938 (9th Cir. 2006); *see also United States v. Garrett*, 253 F.3d 443, 446 (9th Cir. 2001) ("Jurisdiction is a question of law subject to *de novo* review."). A remand motion challenging removal jurisdiction is evaluated the same as a Federal Rule of Civil Procedure 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction. *See Leite v. Crane Co.*, 749 F.3d 1117, 1121–22 (9th Cir. 2014). Under that framework, where the moving party does not contest the

---

[1] Although the contractors' notice of removal did not expressly invoke either the political question or derivative sovereign immunity doctrines as federal defenses, their response to the remand motion did so. The district court also rejected those defenses.

removal notice's factual allegations but instead asserts that those allegations are facially insufficient to invoke federal jurisdiction, we accept the notice's factual allegations as true and draw all reasonable inferences in favor of the remover. *Id*.

When the plaintiffs' motion to remand raises a factual challenge by "contest[ing] the truth of the [remover's] factual allegations, usually by introducing evidence outside the pleadings," however, the remover "must support her jurisdictional allegations with 'competent proof' . . . under the same evidentiary standard that governs in the summary judgment context." *Id*. at 1121 (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 96–97 (2010)). The remover "bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met." *Id*. Except when the factual dispute material to subject-matter jurisdiction is intertwined with an element of the plaintiff's claim, the district court may resolve the factual dispute itself. *Id*. at 1121–22 & n.3.

The guards' motion to remand contests the facial sufficiency of the contractors' notice of removal.[2] We

---

[2] Although the guards requested that the district court take judicial notice of a separate complaint, arbitration award, an arbitration brief, and an email produced in discovery during that arbitration, the guards did not cite or invoke these materials to challenge the notice's jurisdictional allegations. In any event, materials of which a district court may take judicial notice are not considered extrinsic evidence for purposes of Rules 12(b)(1) and 12(b)(6) and, by extension, a motion to remand. *Cf. United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may . . . consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment.").

therefore accept the notice's jurisdictional allegations as true and draw all reasonable inferences in favor of the contractors. *Leite*, 749 F.3d at 1121–22.

### III

As relevant here, § 1442(a)(1) permits removal of a civil action against "any officer (or any person *acting under* that officer) of the United States or of any agency thereof . . . for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1) (emphasis added). To satisfy this requirement, a removing private entity must show that "(a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.' " *Goncalves ex rel. Goncalves v. Rady Childs. Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017) (quoting *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006)).

There is no dispute here that the contractors, as corporations, are "person[s]" for purposes of § 1442(a)(1). *See* Guards' Br. at 10 (acknowledging that the status of the contractors as persons "is not at issue on appeal"); *see also Goncalves*, 865 F.3d at 1244 (holding that corporations are "person[s]" for purposes of §1442(a)(1)). This case therefore comes down to the remaining elements: Is there a causal nexus between the contractors' relevant actions under a federal officer and the guards' claims, and do the contractors assert a colorable federal defense?

Before considering these two questions, we note that courts afford § 1442 a "generous" and "liberal" construction, interpreting the statute "broadly in favor of removal." *Durham*, 445 F.3d at 1252–53. They do so because the statute "vindicates . . . the interests of government itself" in

" 'preserving its own existence.' " *Id*. at 1252 (quoting *Bradford v. Harding*, 284 F.2d 307, 310 (2d Cir. 1960) (Friendly, J.) (itself quoting *Tennessee v. Davis*, 100 U.S. 257, 262 (1879))).

The Supreme Court has accordingly rejected the notion that removal through § 1442 is "narrow" or "limited." *Willingham v. Morgan*, 395 U.S. 402, 406 (1969). While the broad language of § 1442 "is not limitless," the statute still "must be 'liberally construed.'" *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007) (quoting *Colorado v. Symes*, 286 U.S. 510, 517 (1932)). Removal rights under § 1442 thus "are much broader than those under section 1441." *Durham*, 445 F.3d at 1253. For example, "suits against federal officers may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). And unlike garden-variety remand orders for lack of subject-matter jurisdiction or defects in removal procedure, which are not appealable, *see Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 640–41 (2006) (discussing 28 U.S.C. § 1447(d)'s general preclusion of appellate review of remand orders), when (as here) removal relies on § 1442, a remand order for lack of subject-matter jurisdiction *is* appealable. *See* 28 U.S.C. § 1447(d).

## A

With these considerations in mind, we turn to whether there is a causal nexus between the contractors' actions and the guards' claims. To establish such a nexus, the contractors "must show: (1) that [they were] 'acting under' a federal officer in performing some 'act under color of federal office,' and (2) that such action is causally connected with the [guards'] claims against [them]." *County of San Mateo*

*v. Chevron Corp.*, 32 F.4th 733, 755 (9th Cir. 2022) (citing *Goncalves*, 865 F.3d at 1244–50), *cert. denied*, 143 S. Ct. 1797 (2023).

1

As to the first prong, "[f]or a private entity to be 'acting under' a federal officer, the private entity must be involved in 'an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior.' " *Goncalves*, 865 F.3d at 1245 (emphasis in original) (quoting *Watson*, 551 U.S. at 152). The "relationship typically involves 'subjection, guidance, or control,' " in which the private entity helps federal officers "fulfill . . . basic governmental tasks." *Id*. (quoting *Watson*, 551 U.S. at 151–53).

As *Watson* implies, the relevant statutory language— "acting under"—is redolent of common-law agency. *See Chevron*, 32 F.4th at 756 ("[T]he Court considers whether the person is acting on behalf of the officer in a manner akin to an agency relationship.") (citing *Watson*, 551 U.S. at 151); *cf*. 1 *Restatement (Third) of Agency* § 1.01 (2006) ("*Restatement (Third)*") ("Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act.").

*Watson*'s antecedents similarly reiterated that the federal officer removal statute protects federal officers *and their agents*. *See, e.g.*, *Davis*, 100 U.S. at 263 (the federal government "can act only through its officers *and agents*, and they must act within the States") (emphasis added); *Cunningham v. Neagle*, 135 U.S. 1, 62 (1890) (same); *Willingham*, 395 U.S. at 406 (same); *Arizona v. Manypenny*,

451 U.S. 232, 241 n.16 (1981) (same); *Mesa v. California*, 489 U.S. 121, 126 (1989) (same). *Watson* itself also observed that the Court's cases teach that

> the removal statute's "basic" purpose is to protect the Federal Government from the interference with its "operations" that would ensue were a State able, for example, to "arres[t]" and bring "to trial in a State cour[t] for an alleged offense against the law of the State," "officers *and agents*" of the Federal Government "acting . . . within the scope of their authority."

*Watson*, 551 U.S. at 150 (emphasis added and alterations in original) (quoting *Willingham*, 395 U.S. at 406).

We, in turn, have acknowledged that the statute protects the government's agents. *See, e.g.*, *City & County of Honolulu v. Sunoco LP*, 39 F.4th 1101, 1108 (9th Cir. 2022) (holding that removing defendants did not act "under" a federal officer because they "did not serve as government *agents* and were not subject to close direction or supervision") (emphasis added), *cert. denied*, 143 S. Ct. 1795 (2023); *Durham*, 445 F.3d at 1253 ("If the federal government can't guarantee *its agents* access to a federal forum if they are sued or prosecuted, it may have difficulty finding anyone willing to act on its behalf.") (emphasis added). And in *Goncalves*, we held that third-party administrators of a federal employee health plan "acted under" a federal officer when they pursued a subrogation claim in state court. 865 F.3d at 1247. In so doing, we relied on "the interconnectedness" between the government and the administrators in operating and administering the plan,

*id*., as an agency was "responsible for the overall administration of the program while sharing the day-to-day operating responsibility with . . . the insurance carriers." *Id*. at 1246 (cleaned up and quoting *Houston Cmty. Hosp. v. Blue Cross & Blue Shield of Tex., Inc.*, 481 F.3d 265, 271 (5th Cir. 2007)). In this scheme, the administrators "*serv[ed] as the government's agent*" in processing claims. *Id*. (emphasis added).

In the district court's view, this case was more like *Cabalce v. Thomas E. Blanchard & Associates*, 797 F.3d 720 (9th Cir. 2015), where we held that an independent contractor hired by the government to store and dispose of seized fireworks did not act under a federal officer because of "the lack of any evidence of the requisite federal control or supervision over the handling of the seized fireworks." *Id*. at 728. According to the district court, even though the TWISS II contract provides for "some general oversight by the government," it "delegated to the defendants" "specific command and control supervision" of the guards.

As we read the cases, the key difference between *Goncalves* and *Cabalce* is a crucial distinction between independent contractors that are agents and independent contractors that are instead non-agent service providers. "[T]he common term 'independent contractor' is equivocal in meaning and confusing in usage *because some termed independent contractors are agents while others are nonagent service providers*." *Restatement (Third)* § 1.01 cmt. c (emphasis added); *see also United States v. Bonds*, 608 F.3d 495, 505 (9th Cir. 2010) (characterizing circuit precedent as "recognizing that 'an independent contractor . . . may be an agent' in limited circumstances in which he acts 'subject to the principal's overall control and direction' ") (quoting *Dearborn v. Mar Ship Ops., Inc.*, 113 F.3d 995, 998

n.3 (9th Cir. 1997)); *Restatement (Second) of Agency* § 14N (1958) ("One who contracts to act on behalf of another and subject to the other's control except with respect to his physical conduct *is an agent and also an independent contractor*.") (emphasis added).

In *Goncalves*, we held that because of the government's overall control of the program, the administrators were the government's agents; in *Cabalce*, because of the government's lack of such control, the contractor was a "*nonagent* service provider." *Restatement (Third)* § 1.01 cmt. c (emphasis added). We therefore only need to ask: Are the contractors here the government's common-law agents, as in *Goncalves*? If so, that distinguishes this case from *Cabalce*.

The contractors' notice of removal alleges that they were "acting under federal authority by performing security services according to United States military directives." The notice also alleges that the "TWISS II contract required all Contractor personnel . . . to follow orders issued by the 'Combatant Commander, including those related to force protection, security, health, [or] safety.' " (Alteration in original.)[3] At argument, the parties agreed that under this and

---

[3] The TWISS II contract, because it is repeatedly referred to in the notice of removal and attached complaint, is treated as incorporated into the notice, just as it would be treated as incorporated into a complaint for Rule 12(b)(1) and 12(b)(6) purposes if the guards' motion to remand were a motion to dismiss. *Cf. Ritchie*, 342 F.3d at 908 ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").

other provisions[4] in the TWISS II contract, a U.S. military base commander in Iraq had the authority to order the contractors' off-duty guards into combat to repel an enemy attack.

Under common-law agency principles, the TWISS II contract's subordination of the contractors to U.S. military command in the performance of their duties in Iraq sufficed to render them DOD agents. *See Restatement (Third)* § 1.01 (explaining that an agent acts "on the principal's behalf and subject to the principal's control"); *see also Hollingsworth v. Perry*, 570 U.S. 693, 713 (2013) ("An essential element of agency is the principal's right to control the agent's actions.") (quoting *Restatement (Third)* § 1.01, Comment *f*). The Combatant Commander controlled the contractors' actions, as the government's agents, for fighting the Iraq War.

We hold that where the government's independent contractor is also an agent under common-law agency principles as reflected in the *Restatement (Third) of Agency*, the contractor "act[s] under" a federal officer for purposes of § 1442(a)(1). In so holding, we do not decide whether "acting under" a federal officer is a status necessarily limited

---

[4] For example, Paragraph 3.2 of the TWISS II contract provided that "[t]he contractor shall maintain command and control of their guard workforce *under the general direction of the cognizant* [Area Defense Operations Center]/[Base Defense Operations Center]. The contractor shift supervisor shall have the means to stay in continual contact with [Base Defense Operations Center] personnel. The contractor shall establish command and control procedures *to disseminate direction from the cognizant* [Base Defense Operations Center], through the Shift Supervisor, to the Guard Team Leaders and Guards." (Emphasis added.) Under these provisions, on-scene military commanders controlled the contractors' security operations in Iraq.

to the government's common-law agents. *Cf. Watson*, 551 U.S. at 153–54 (observing that courts have looked to various considerations to determine whether a private person "act[s] under" a federal officer for purposes of § 1442(a)(1)).[5] Instead, we merely hold that serving as the government's common-law agent satisfies the statute's "acting under" requirement.

2

Next, we must determine whether there is a causal connection between the actions of the contractors as agents of the government and the guards' claims. To satisfy the causal connection requirement, the contractors "need show only that the challenged acts 'occurred *because of* what they were asked to do by the Government.' " *Goncalves*, 865 F.3d at 1245 (emphasis in original) (quoting *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008)). "In assessing whether a causal nexus exists, we credit the defendant's theory of the case." *Leite*, 749 F.3d at 1124 (citing *Jefferson County*, 527 U.S. at 432; *Isaacson*, 517 F.3d at 137).

The "hurdle erected by [the causal-connection] requirement is quite low." *Goncalves*, 865 F.3d at 1244 (alteration in original) (quoting *Isaacson*, 517 F.3d at 137). "It is enough that [the defendant's] acts or his presence at the place in performance of his official duty constitute the basis, though mistaken or false," of a plaintiff's claims. *Maryland*

---

[5] The dissent charges that our decision today "contravenes" *Watson*, Dissent at 41, but we previously characterized that decision as "descriptive . . . [of] what the lower courts were doing" rather than establishing a "certain test" for "acting under" a federal officer. *Goncalves*, 865 F.3d at 1245.

*v. Soper*, 270 U.S. 9, 33 (1926), *quoted in Goncalves*, 865 F.3d at 1244.

The contractors therefore only need to show that the actions they took which gave rise to the guards' claims resulted from their work for DOD. *See Jefferson County*, 527 U.S. at 433 (stating that "[t]he circumstances that gave rise to the" claim against the federal officer, "not just" the specific challenged acts of that federal officer, are enough to establish the "essential nexus" between the activity under "color of office" and a claim against the officer); *Willingham*, 395 U.S. at 409 ("[I]t [is] sufficient for [removing defendants] to have shown that their relationship to [the plaintiff] derived solely from their official duties."); *Isaacson*, 517 F.3d at 137–38 ("To show causation, Defendants must only establish that the act that is the subject of Plaintiffs' attack (here, the production of the byproduct dioxin) occurred *while* Defendants were performing their official duties.") (emphasis in original).[6]

---

[6] We note that in 2011 Congress amended § 1442(a)(1) to allow removal by federal officers (and persons acting under them) of suits "for *or relating to* any act under color of such office . . . ." 28 U.S.C. § 1442(a)(1); *see* Removal Clarification Act of 2011, Pub. L. No. 112–51, § 2(b)(1)(A), 125 Stat. 545. Previously, the statute allowed for removal of suits "for any act under color of such office." By so amending the statute, "Congress broadened federal officer removal to actions, not just *causally* connected, but alternatively *connected* or *associated*, with acts under color of federal office." *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 292 (5th Cir. 2020) (en banc) (emphasis in original); *cf. Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (stating that the "ordinary meaning" of "relating to" "is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with' ") (quoting *Black's Law Dictionary* 1158 (5th ed. 1979)). We read our "causal nexus" test as

The notice of removal plainly establishes this: The contractors' challenged acts—including allegedly requiring the guards to work hours beyond the limits set in the TWISS II contract—occurred while the former discharged their security duties for the Combatant Commander in the Iraq War. We therefore hold that a causal nexus exists between the contractors' actions as agents of DOD and the guards' claims.[7] The district court's finding to the contrary was consequently in error.

---

incorporating the "connected or associated with" standard reflected in Congress's 2011 amendment and the Supreme Court's decisions. *See Goncalves*, 865 F.3d at 1244–45.

[7] The dissent contends that we have overlooked "the separate nexus requirement that a defendant's challenged actions must have been 'under color' of a federal officer's office." Dissent at 42. But no decision of ours or the Supreme Court—and the dissent cites none—treats the "under color" requirement as distinct from either the "acting under" or "causal connection" requirements.

The dissent further asserts that our analysis "leads to the astonishing conclusion that a federal contractor's actions in allegedly fraudulently recruiting its employees are 'under color' of a federal officer's office, and that, in taking those fraudulent actions, the federal contractor is 'acting under' a federal officer." *Id*. at 43. But to so accept the *guards'* allegations as true "is to decide the merits of the case." *Jefferson County*, 527 U.S. at 432. "Just as requiring a 'clearly sustainable defense' rather than a colorable defense would defeat the purpose of the removal statute, so would demanding an airtight case on the merits in order to show the required causal connection." *Id*. (citation omitted) (citing *Willingham*, 395 U.S. at 407). A court must therefore "credit the [removing defendant's] theory of the case for purposes" of making "*an adequate threshold showing that the suit is for an act under color of office*." *Id*. (cleaned up and emphasis added). As explained below, the contractors' theory of the case is that sometimes DOD required them to make the guards work overtime. "[W]hether the challenged act was outside the

## B

Finally, we must determine whether the contractors possess a colorable federal defense. *See Goncalves*, 865 F.3d at 1244. The purpose of this requirement is to supply a federal element under which the defense to the action arises. *Mesa*, 489 U.S. at 136. Thus, "the federal-question element is met if the defense depends on federal law." *Jefferson County*, 527 U.S. at 431. In determining removal jurisdiction under § 1442(a)(1), the scope of the court's inquiry is only whether the defendant advanced a colorable federal defense, "not whether [the] defense will be successful." *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1429 (11th Cir. 1996) (citing *Mesa*, 489 U.S. at 133). Defendants "need not win [their] case" before removal. *Willingham*, 395 U.S. at 406–07. And a removing defendant need not have a colorable federal defense for every claim; one colorable federal defense against one asserted claim is enough. *Mesa*, 489 U.S. at 129.

The contractors assert three federal defenses: compliance with federal rules and regulations, derivative sovereign immunity, and the political question doctrine. Contractors' Opening Br. at 23. We need consider only compliance, where the contractors argue the federal regulations incorporated into the TWISS II contract provide a colorable defense. *Id.* at 43–45.[8]

---

scope of [the contractors'] official duties, or whether it was specifically directed by the federal Government, is one for the federal—not state—courts to answer." *Leite*, 749 F.3d at 1124 (quoting *Isaacson*, 517 F.3d at 138).

[8] Thus, we express no view as to whether the contractors' failure to assert their derivative sovereign immunity and political question defenses in the removal notice waived those defenses.

When a plaintiff's alleged injuries arise from conduct of the defendant acting under federal law and the court is charged with "the proper interpretation of . . . the statute" to "determin[e] . . . the scope of [the defendant's] duties," then a "colorable federal defense" exists. *Mesa*, 489 U.S. at 129–30 (discussing *Cleveland, C., C. & I. R. Co. v. McClung*, 119 U.S. 454 (1886)).

In response to the complaint's allegations that the guards' work hours in Iraq violated their employment contracts and the TWISS II contract, the contractors' notice of removal alleges that Federal Acquisition Regulations (FAR) incorporated into the latter contract required the guards to "follow orders issued by the 'Combatant Commander, including those relating to force protection, security, health, [or] safety.' " (Quoting 48 C.F.R. § 252.225-7040(d)(1)(iv).) The notice further alleges the defense that "regardless of whether a [guard] is on shift or not, or has already worked more than 72 hours in a given week, he or she may have been required (pursuant to the TWISS II contract and the FAR) to provide assistance for a variety of reasons at the direction of the relevant military commander."[9]

---

[9] The dissent contends that the removal notice failed to identify "any 'officer . . . of the United States or of any agency thereof' under whom Defendants acted." Dissent at 43 n.6 (ellipsis in original) (quoting 28 U.S.C. § 1442(a)(1)). The notice, however, alleged that the contractors acted under the direction of "the relevant military commander." The local military commander at any given base where the contractors' employees were deployed is surely an "officer . . . of the United States" for purposes of the statute. The notice's more general identification of DOD also suffices, as in *Goncalves* we characterized the Office of Personal Management as "the relevant federal officer." 865 F.3d at 1245;

On appeal, the contractors supplemented the factual allegations of their removal notice by pointing (Contractors' Reply Br. at 8) to a declaration filed in related litigation in which one of their on-site managers in Iraq stated that DOD "always prioritized manning posts over all other requirements, including providing guards with a day off every week. As a result, guards [at one site] received days off less frequently than employees at other bases staffed by" the contractors. *Risinger v. SOC LLC*, No. 2:12-cv-00063 (D. Nev. Apr. 1, 2019), ECF No. 342-7 ¶ 12 (Declaration of John Huppee).[10]

The district court held that the contractors' compliance defense failed, reasoning that "the regs that are being cited by the defendants do not provide a defense to the plaintiffs' claims here of fraud or of breach of contract between those two parties, the plaintiffs and the defendants." In so holding, the district court committed two errors.

---

*see also Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679, 684 (9th Cir. 2022) (characterizing the statute as allowing removal by any "person or entity who acts under a federal officer or *agency*") (emphasis added).

[10] Although a removal notice "cannot be amended to add a separate basis for removal jurisdiction after the thirty day period" of 28 U.S.C. § 1446(b), *ARCO Env't Remediation, L.L.C. v. Dep't of Health & Env't Quality of Mont.*, 213 F.3d 1108, 1117 (9th Cir. 2000) (quoting *O'Halloran v. Univ. of Wash.*, 856 F.2d 1375, 1381 (9th Cir. 1988)), "a defendant may amend" such a notice "after the thirty day window has closed to correct a 'defective allegation of jurisdiction,' " *id.* (citing 28 U.S.C. § 1653). The Huppee declaration "clarif[ies] the factual underpinnings of the previously asserted basis" for removal. *Kinetic Sys., Inc. v. Fed. Fin. Bank*, 895 F. Supp. 2d 983, 994 (N.D. Cal. 2012). We can take judicial notice of that declaration as a court filing in related litigation. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc*., 442 F.3d 741, 746 n.6 (9th Cir. 2006); *see also* Fed. R. Evid. 201(d).

First, the district court applied the wrong standard—it decided the merits of the contractors' federal defense based on federal regulations. But for jurisdictional purposes, the contractors' federal defense doesn't have to prevail, it merely needs to be colorable.

To determine whether a defense is colorable, we need not reinvent the jurisprudential wheel. A long-standing body of law governs whether a *claim* is colorable for securing federal question jurisdiction. *See Bell v. Hood*, 327 U.S. 678, 682–83 (1946) (holding that an asserted federal claim triggers federal question jurisdiction unless the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous"). We agree with the Fifth Circuit and hold that the same standard governs whether a federal *defense* alleged in a notice of removal is colorable for § 1442(a)(1) purposes. *See Latiolais*, 951 F.3d at 297.

Thus, the question the district court should have addressed was not whether the contractors' asserted federal defense was meritorious, but whether that defense was "immaterial and made solely for the purpose of obtaining jurisdiction or . . . wholly insubstantial and frivolous." *Bell*, 327 U.S. at 682–83. Any federal defense that clears the low bar of *Bell* is colorable.

Second, the district court misapprehended the nature of the guards' claims. The guards allege (among other things) that their excessive work hours violated not only their employment contracts, but also the TWISS II contract. As the latter incorporated 48 C.F.R. § 252.225-7040, the contractors have a colorable defense to the guards' breach claim for excessive work hours based on compliance with this regulation. *Cf. Magnin*, 91 F.3d at 1428 ("At least part

of Smith's defense is that he acted within the scope of his federal duties, that what he did was required of him by federal law, and that he did all federal law required. That defense raises a federal question, which justifies removal."). Thus, we conclude that the contractors' removal notice, as supplemented by the declaration of Mr. Huppee, alleged a colorable federal defense to the guards' breach of contract claim based on excessive work hours—that DOD in some circumstances required those excessive hours.

*     *     *

The allegations of the notice of removal, taken as true and supplemented by record facts in related litigation of which we take judicial notice, establish that the contractors served as DOD's agents in prosecuting the Iraq War, that the guards' claims arise out of the contractors' performance of those federal duties, and that the contractors have asserted a colorable federal defense to at least one of the guards' claims. Removal was therefore proper. By finding otherwise and remanding to state court, the district court erred. We reverse and remand for further proceedings.

**REVERSED AND REMANDED.**

COLLINS, Circuit Judge, dissenting:

In reversing the district court's order remanding this case to state court, the majority seriously misconstrues the requirements of the federal officer removal statute, 28 U.S.C. § 1442(a)(1), and it misapplies the standards for pleading that statute's jurisdictional requirements in a notice of removal. I respectfully dissent.

## I

Plaintiffs are 29 individuals who were employed as armed guards at U.S. military bases in Iraq by Defendant SOC, LLC ("SOC"), a private security company operating under a contract with the U.S. Department of Defense ("DoD"). SOC is a joint venture of Defendants SOC-SMG, Inc. ("SMG") and Day & Zimmerman, Inc. ("D&Z"). All of the Plaintiffs' service in Iraq occurred between July 2009 and December 2011, although each individual Plaintiff worked only for different shorter time periods within that overall timeframe.

On October 19, 2019, Plaintiffs filed this action in Nevada state court, alleging that they had been recruited "under false promises with respect to the schedule" they would work. The gravamen of the complaint is that, in pursuing its contract with DoD, SOC followed a strategy of "bidding to the man," meaning that the price of its bid was based on the "exact number" of guards needed, "without any allowance for rest days and/or sick or other types of leave." As a result, after SOC was awarded the contract, it was "consistently short of the number of individuals required to fully man the security checkpoints and posts," which required Plaintiffs "to work in excess of 6 days per week and 12 hours per day." These time demands were allegedly

contrary to the assurances made to Plaintiffs before and after SOC recruited them. The complaint further alleges that Plaintiffs were required to work in excess of 6 days per week and 12 hours per day "without meal or rest periods, and without any overtime compensation."

Plaintiffs' complaint asserts eight state law causes of action: (1) promissory fraud based on alleged fraud in inducing Plaintiffs to enter into contracts with SOC; (2) negligent misrepresentation based on the same allegations; (3) unjust enrichment based on the alleged promissory fraud; (4) money had and received based on SOC's receipt of excess funds from DoD that should have been paid to Plaintiffs; (5) breach of SOC's contracts with Plaintiffs, which contracts allegedly incorporated portions of SOC's contract with DoD; (6) breach of the implied covenant of good faith and fair dealing in SOC's contracts with Plaintiffs; (7) quantum meruit based on the failure to pay overtime compensation; and (8) unjust enrichment based on breach of contract. Although the complaint was brought against SOC, SMG, and D&Z (collectively, "Defendants"), it contains no specific allegations concerning SMG or D&Z. Instead, the complaint alleges that each Defendant is derivatively liable for the acts of the others under a variety of theories. The complaint seeks damages, restitution, disgorgement, and punitive damages.

On October 26, 2020, Defendants removed the case to federal court under the federal officer removal statute. *See* 28 U.S.C. § 1442(a)(1). Plaintiffs moved to remand the case, and the district court granted that motion. Defendants timely appealed.

## II

Before turning to whether the district court properly remanded the case, it is helpful first to review the language of the relevant removal statute and the caselaw construing it. The relevant statute under which Defendants removed this case to federal court provides as follows:

> (a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
>> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1).

On its face, the statute permits removal only of matters against four specified types of defendants, namely, (1) the "United States"; (2) an "agency thereof"; (3) an "officer . . . of the United States or of any agency thereof"; and (4) a "person" acting under such an officer. *Id.* Because neither

the United States, a federal agency, nor a federal officer has been named as a defendant in this case, only the latter category of defendants is at issue here. In the context of removal by such persons, the statute has been construed as imposing several requirements for removal, which I will address in turn.

## A

First, as the text of the statute confirms, the state court suit must be "against or directed to" a "person acting under that *officer*," meaning an "officer . . . of the United States or of any agency thereof." 28 U.S.C. § 1442(a)(1) (emphasis added). Accordingly, it is *not* sufficient for a private "person" invoking this statute simply to assert that he or she is acting, in some general sense, under the "United States" or an "agency thereof." Rather, the defendant must show that it is acting under a specific *officer* of the United States or of one of its agencies. Two crucial features of the text confirm this point: (1) the phrase "any person acting under that officer" makes specific reference only to an "officer" (not the "United States" or an "agency"); and (2) that phrase is located literally in the middle of the noun phrase "officer . . . of the United States or of any agency thereof" and therefore cannot be said to refer to the other two items in § 1442(a)(1)'s list (namely, the "United States" and "any agency thereof").

The statutory history of § 1442(a)(1)'s text further confirms this conclusion. Between the enactment of title 28 of the United States Code in 1948 and the first subsequent amendment of § 1442 in 1996, § 1442(a)(1) read as follows:

> (a) A civil action or criminal prosecution commenced in a State court against any of the

following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

> (1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1) (1995).  In *International Primate Protection League v. Administrators of Tulane Educational Fund*, 500 U.S. 72 (1991), the Supreme Court held that the statute's reference to "any agency thereof" was an alternative object in the prepositional phrase "of the United States or any agency thereof," so that the statute granted removal authority only to "[a]ny officer of [1] the United States or [2] any agency thereof."  The Court expressly rejected the alternative reading under which the phrase "any agency thereof" would be construed as an alternative subject of the entire sentence, so that the removal power would extend separately to "[a]ny officer of the United States" and to "any agency thereof."  *Id.* at 79.  Accordingly, the Court held that the then-current version of § 1442(a)(1) did not "permit[] removal by federal agencies."  *Id*. at 76.

In response to *International Primate Protection League*, Congress amended § 1442(a)(1) in 1996 to expressly permit removal by federal agencies and not merely by federal officers.  *See Watson v. Philip Morris Cos.*, 551 U.S. 142, 148–49 (2007).  Using strike-through to show deletions and

underlining to show additions, the amendments made by Congress to § 1442(a)(1) in 1996 were as follows:

> (a) A civil action or criminal prosecution commenced in a State court against any of the following ~~persons~~ may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
>> (1) <u>The United States or any agency thereof or any</u> ~~Any~~ officer <u>(or any person acting under that officer)</u> of the United States or <u>of</u> any agency thereof, ~~or person acting under him,~~ <u>sued in an official or individual capacity</u> for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

*See* Federal Courts Improvement Act of 1996, Pub. L. No. 104-317, § 206(a)(2), 110 Stat. 3847, 3850 (1996) (alterations added). These changes confirm that, while Congress expressly added "[t]he United States" or "any agency thereof" as entities entitled to removal, the coverage of private "persons" allowed to remove cases remained limited to only those persons acting under an "officer"—and not the "United States" or "any agency thereof." The point had been clear in the pre-1996 version of the statute: that version stated expressly that the removal power extended only to an "officer of the United States or any agency thereof, or person acting under *him*" (*i.e.*, the officer). *See*

*Int'l Primate Prot. League*, 500 U.S. at 79 n.5 (quoting the relevant portion of the then-applicable version of § 1442(a)). Had Congress intended the phrase "acting under" to extend to all three federal entities with removal authority (*i.e.*, the "United States"; "any agency thereof"; or "any officer"), it could have left the phrase "person acting under him" where it was and changed "under him" to "under any of them." Instead, it moved the phrase "person acting under" into the very middle of the noun phrase "officer . . . of the United States or of any agency thereof"; it added "of" before "any agency thereof" in that noun phrase (thereby expressly adopting *International Primate Protection League*'s construction of *that* specific phrase); and it changed "him" to "that officer."

Accordingly, private "persons," including corporations, may remove a suit only if they show that they were "acting under" an "*officer . . . of the United States or of any agency thereof.*" 28 U.S.C. § 1442(a)(1) (emphasis added). In *Watson*, the Court addressed the further question of what must be shown to establish that a person was "acting under" a federal officer.[1] There, the Court held that "acting under"

---

[1] At the outset of its opinion, the Court in *Watson* noted that the text confirms that the statute requires a showing that the person was "'*acting under*' an '*officer*' of the United States," *see Watson*, 551 U.S. at 145 (emphasis in original), but it later more loosely stated that the statute "permits removal" if the person "was 'acting under' any '*agency*' or 'officer' of the United States," *id.* at 147 (emphasis added). The looser language is presumably due to the fact that no party had raised the distinction, the Court did not discuss it, and it was of no consequence to the outcome of the case. *Watson* therefore cannot be understood as having spoken to this issue and as having reached an opposite conclusion. *See Cooper Indus., Inc. v. Avail Servs., Inc.*, 543 U.S. 157, 170 (2004) ("Questions which merely lurk in the record, neither brought

a federal officer, for purposes of § 1442(a)(1), means (1) that the defendant was operating under the "subjection, guidance, or control" of a federal officer; and (2) that the defendant was involved in "an effort to assist, or to help carry out, the duties or tasks of the federal superior."  551 U.S. at 151–52 (citation and emphasis omitted).

## B

In addition to limiting the "persons" who may invoke its removal authority, § 1442(a)(1) also limits the type of state court "cases" that such persons may remove.  Specifically, the case must be "against or directed to" the person and must be "[1] for or relating to any act under color of such office or [2] on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue." 28 U.S.C. § 1442(a)(1).  Only the first of these clauses is at issue here.  That clause, in turn, requires a court to consider what conduct counts as "any act under color of such office" and what suits count as ones "for or relating" to such acts.

---

to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." (citation omitted)). The same is true of the Ninth Circuit cases cited by the majority that in some places have used similarly loose language without any awareness of this specific issue of statutory construction.  *See* Opin. at 20 n.9 (citing *Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679, 684 (9th Cir. 2022) (assuming, without discussion, that acting under a "federal officer or agency" is sufficient), and *Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1245 (9th Cir. 2017) (assuming, without discussion, that an agency can qualify as an "officer")).  And as explained above, the statutory language, as a grammatical matter, simply cannot bear the reading that a person "acting under" an "agency," but *not* under an "officer," may remove a case under § 1442(a)(1).

The requirement that the case involve, not just a "person acting under" a federal officer, but also an "*act* under color of such office," confirms that the particular "acts" involved in the suit must have a sufficient "causal connection" to the "asserted official authority." *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999) (citations omitted);[2] *see also Medical Dev. Int'l v. California Dep't of Corr. & Rehab.*, 585 F.3d 1211, 1216 (9th Cir. 2009) ("The requirement of 'any act under color of such office' has been construed as requiring a causal connection between the charged conduct and the official authority." (citation omitted)). Moreover, because "such office" clearly refers back to the federal "officer" under whom the defendant is "acting," it follows that the "act[s]" involved must be "under color" of *that officer's* office. In addition, the phrase "act under color of such office" has long been construed as imposing a requirement that the "removal must be predicated on the allegation of a *colorable federal defense*" with respect to those acts. *Mesa v. California*, 489 U.S. 121, 129 (1989) (emphasis added) (adopting this construction in light of longstanding precedent and in order to avoid the constitutional question whether, in the absence of such a colorable defense, federal question jurisdiction would exist under Article III).

---

[2] *Jefferson County* reached this conclusion in the context of the separate paragraph of § 1442 that allows removal of suits against "[a]ny officer of the courts of the United States, for or relating to any act under color of office or in the performance of his duties." 28 U.S.C. § 1442(a)(3). But *Jefferson County* made clear that this nearly identically worded requirement was the same under the two paragraphs, because the Court explicitly construed this requirement in § 1442(a)(3) by drawing upon cases discussing the same requirement in § 1442(a)(1). *See* 527 U.S. at 431 (citing *Willingham v. Morgan*, 395 U.S. 402, 409 (1969)).

The further requirement that the case be one "for or relating to" acts under "color of office" means that the defendant must *also* show an adequate "causal nexus between [defendant's] actions, taken pursuant to a federal officer's directions, *and plaintiff's claims*." *Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017) (emphasis added) (citation omitted). In other words, it is not enough to identify acts by the defendant that were taken "under color" of a federal officer's office if those acts bear no relation to the plaintiff's claims about wrongful conduct. As we have noted, the burden to show a causal connection between the defendant's under-color-of-office acts and the plaintiffs' claims is "quite low," *id*. (quoting *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008)). That is unsurprising, because it is almost tautological that a *defendant's* wrongful acts will be connected to the plaintiff's claims.[3] In such situations, the Supreme Court has described the applicable burden as requiring a showing that the suit "has *arisen out of* the acts done by [the defendant] under color of federal authority." *Maryland v. Soper*, 270 U.S. 9, 33 (1926) (emphasis added).

---

[3] The issue is more difficult in cases, such as *Goncalves*, that involve atypical procedural contexts in which a state proceeding is directed to the removing entity even though that entity has not been named as a defendant in the traditional sense. *See Goncalves*, 865 F.3d at 1250 (holding that an ancillary proceeding to expunge a removing party's lien was covered by § 1442(a)(1)). As *Goncalves* noted, Congress amended § 1442(a)(1) in 2011 by, *inter alia*, adding the phrase "or relating to" to the relevant clause, so that removal is authorized if the state court suit is one "for *or relating to* any act under color of such office." *See* Removal Clarification Act of 2011, Pub. L. No. 112-51, § 2(b)(2), 125 Stat. 545, 545 (2011) (emphasis added); *see also Goncalves*, 865 F.3d at 1250. This amendment confirms that the removing party need not be a formal defendant in order to establish the requisite connection.

As the Court stated in *Watson*, the question in the context of an ordinary lawsuit is whether the removing defendant, "in carrying out the 'act[s]' *that are the subject of the [plaintiff's] complaint*[,] was 'acting under'" a federal officer. 551 U.S. at 147 (emphasis added).

### III

Having set forth the general standards governing removal under § 1442(a)(1), I next consider whether Defendants' notice of removal sufficiently established that those statutory requirements were met.

"To remove a case from a state court to a federal court, a defendant must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 83 (2014) (quoting 28 U.S.C. § 1446(a)). Because that "short and plain statement" requirement of the removal statute "tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure," the same pleading standards applicable to complaints under Rule 8 also apply to the jurisdictional allegations in a notice of removal. *Id.* at 87. Accordingly, the removal notice "must allege facts, not mere legal conclusions, in compliance with the pleading standards established in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). Where, as here, the plaintiffs' motion to remand facially challenges the removal notice's jurisdictional allegations and does not rely on an evidentiary showing, the remand motion is resolved by assessing whether the jurisdictional allegations in the removal notice meet the pleading standards that would be applied in

deciding a "motion to dismiss under Rule 12(b)(6)."**4** *Id.* In my view, Defendants' notice of removal was deficient for the simple reason that it wholly fails to allege sufficient facts to support a colorable federal defense.

In finding that all of the jurisdictional requirements of § 1442(a)(1) have been met, the majority relies on only one asserted defense against one subset of Plaintiffs' claims. Specifically, the majority focuses on Plaintiffs' fifth cause of action, for breach of contract, which alleges that Plaintiffs' contracts with SOC incorporated the requirement, in SOC's underlying contract with DoD (the "TWISS II contract"), that Plaintiffs not work more than 12 hours per day or 72 hours per week. *See* Opin. at 19–20. As to Plaintiffs' claim that these time limits were violated, the majority holds, Defendants have adequately shown that they have a colorable defense based on the TWISS II contract's incorporation of the general requirement that SOC "shall comply with, and shall ensure that its [relevant] personnel . . . are familiar with, and comply with, all applicable . . . [o]rders, directives, and instructions issued by the Combatant Commander, including those relating to force protection, security, health, safety, or relations and interaction with local nationals." 48 C.F.R. § 252.225-7040(d)(1)(iv). According to the majority, this provision gave combatant commanders authority, if warranted under the circumstances, to direct that a specific person remain on duty even though he or she had already completed 12 hours

---

[4] By contrast, if a plaintiff's remand motion presents a "factual" challenge that relies upon an evidentiary showing, the district court, after appropriate proceedings (which may include discovery), may itself resolve any factual disputes concerning the jurisdictional questions, except to the extent that those factual issues are intertwined with the merits of the suit. *Leite*, 749 F.3d at 1121–22.

that day or 72 hours for that week.  *See* Opin. at 22–23.  Such an order, the majority posits, would override those time limits and would provide a colorable defense to any contractual claim by the affected employee.

The problem with the majority's reliance on this very narrow theory is that the removal notice wholly fails to allege sufficient facts to support it.  All that the notice says on this point is that, "regardless of whether [an employee] is on shift or not, or has already worked more than 72 hours in a given week, he or she *may have been required* . . . to provide assistance for a variety of reasons at the direction of the relevant military commander" (emphasis added).  The notice thus never even contends that such an order was ever actually given, nor does it plead any facts that would support such a contention; the possibility is left as purely speculative and theoretical.  That plainly falls far short of what *Iqbal* requires.  *See Iqbal*, 556 U.S. at 678 (stating, in the context of pleading a cause of action, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief'" (citation omitted)).  Here, Defendants' removal notice not only failed to plead facts more than "merely consistent with" their the-commander-told-me-to defense, it pleaded no facts in support of that defense at all.

The majority does not contest that the removal notice was deficient on this score.  Instead, the majority asserts that certain additional factual contentions included in Defendants' reply brief should be construed as reflecting a request to amend, under 28 U.S.C. § 1653, the removal notice's defective jurisdictional allegations.  *See* Opin. at 21 n.10.  But even assuming *arguendo* that such an amendment under § 1653 would be appropriate in this context, the

proffered additional factual allegations fall short. These further allegations merely assert that, even though DoD "was aware of the challenge surrounding recruiting and retaining guards," DoD "prioritized manning posts over all other requirements." Those meager facts do not plausibly establish a colorable federal defense. Everyday difficulties in supplying an adequate number of guards (due to the systemic shortfalls caused by Defendants' alleged "bidding to the man" approach to the TWISS II contract) cannot colorably be defended on the ground that the *ordinary* staffing requirements amounted to an "order" that overrides the applicable time limits. That much is clear from the TWISS II contract's express imposition of a general duty on SOC to "manage [its] work force in a manner that does not require any guard or guard team leader to work any longer than one 12 hour shift per 24 hour period and not more than 72 hours per week." That is, the systemic failure to have sufficient personnel available to supply the necessary staff without SOC requiring excess overtime is not a defense to the breach-of-contract claim; it is *itself* a breach. As a result, the defense posited in the removal notice could only conceivably apply if a commander gave a direct order, on a specific occasion, that a *particular* guard must stay on duty past the applicable time limit. The notice and the additional proffer are utterly bereft of any factual allegations that could support such a conclusion.[5]

---

[5] Nor does the removal notice (or the proffer) plead any facts that could colorably support any other defense to Plaintiffs' contract-based claims. Indeed, the notice does not even mention the other alternative defenses— derivative sovereign immunity and the political question doctrine—that Defendants have asserted in their opening brief on appeal. To the extent that I can fathom how Defendants think that these doctrines could apply

Beyond this very narrow (and wholly unsupported) defense to the subset of Plaintiffs' claims that are contract-based, the majority does not contend that Defendants have raised a colorable federal defense to any of Plaintiffs' *other* claims.  And for good reason: any such contention would be simply frivolous.  Plaintiffs' claims for promissory fraud, negligent misrepresentation, and related ancillary relief rest on the premise that Defendants engaged in a fraudulent practice of (1) "bidding to the man" by presenting DoD with an artificially low bid that Defendants knew would require excess overtime; and (2) concealing this inevitability of excess overtime from Plaintiffs in their recruiting pitches. Quite obviously, no federal officer ordered the employers to low-bid the Government; the bid was made *to* DoD, not the other way around.  Nor does the removal notice dare to make the absurd suggestion that DoD authorized Defendants to make fraudulent recruiting pitches to Plaintiffs.  The only remaining category of claims asserted in the complaint involves allegations that Plaintiffs are owed certain monies in connection with *uncompensated* overtime.  Defendants, of course, do not allege that any federal officer directed them not to *pay* the guards the compensation due to them for services rendered.

Accordingly, the removal notice wholly fails to allege a colorable federal defense to Plaintiffs' claims.  As a result, the requirements of § 1442(a)(1) were not met, and the motion to remand was properly granted.

---

here, they rest on the same theory that a commander ordered them to engage in the alleged wrongful conduct.  Given the lack of any sufficient factual allegations to support such a contention, those defenses likewise necessarily fail.

## IV

Because I conclude that Defendants' removal notice failed to adequately plead a colorable federal defense, it is, strictly speaking, unnecessary for me to address whether Defendants' notice sufficiently established the other jurisdictional requirements of § 1442(a)(1). But what the majority says on that score is so troublingly wrong that I cannot overlook it. Effectively, the majority holds that any federal contractor who qualifies as an "agent" of the Government in some general sense may remove any case to federal court in which that contractor has a colorable federal defense. That is not the law.

As I explained earlier, § 1442(a)(1) imposes two distinct nexus requirements, which we recently summarized as follows: "To demonstrate a causal nexus, the private person must show: (1) that the person [a] was 'acting under' a federal officer [b] in performing some 'act under color of federal office,' and (2) that such action is causally connected with the plaintiff's claims against it." *County of San Mateo v. Chevron Corp.*, 32 F.4th 733, 755 (9th Cir. 2022) (citation omitted). The majority says that these requirements are satisfied merely by showing that the defendant contractor is an "agent" of the Government and that, absent that contractual relationship, the plaintiff's claim would never have arisen. *See* Opin. at 10–18. This represents a substantial dilution of the burden required to justify removal under § 1442(a)(1).

According to the majority, an "overall" "subordination" of a contractor to federal authority makes that contractor the Government's "agent" in the performance of its duties under the contract and suffices to show that the contractor is "acting under" a federal "officer" for purposes of

§ 1442(a)(1). *See* Opin. at 14–15. But this analysis overlooks an important feature of agency law as well as the further requirements of § 1442(a)(1).

The majority seems to think that overall supervision renders the contractor the Government's agent for all purposes, but that is not how agency law works. "Aspects of an overall relationship may constitute agency and entail its legal consequences while other aspects do not." RESTATEMENT (THIRD) OF AGENCY § 1.01 cmt. b (AM. L. INST. 2006). Principals may, for instance, convey authority to agents to act for either general or particular purposes. *See, e.g.*, *Schimmelpennich v. Bayard*, 26 U.S. 264, 283 (1828) (noting the familiar principle that an agent "ha[s] no general authority to personate the [principal] in all respects whatever; but was an agent appointed for particular purposes, with limited powers, calculated to sub serve those purposes"). The majority cites no authority that would support its "overall control" test, under which Defendants' subjection to overall "U.S. military command" apparently suffices to render them agents of DoD for *all* purposes. *See* Opin. at 13–16. The majority is therefore wrong in suggesting that every action Defendants took in connection with their contract automatically qualifies as "acting under" a federal officer.

This same point is underscored by § 1442(a)(1)'s additional requirement that the particular "*act[s]*" at issue must have been performed "under color" of the federal officer's office. 28 U.S.C. § 1442(a)(1) (emphasis added). As I noted earlier, we recently held in *Chevron* that the causal nexus requirement imposes a burden to show "(1) that the person [a] was 'acting under' a federal officer [b] in performing some 'act under color of federal office,' and (2) that such action is causally connected with the plaintiff's

claims against it." *Chevron*, 32 F.4th at 755. In the majority's view, however, element (1)(b) in the above quotation adds nothing and is simply duplicative of the statute's other requirements. *See* Opin. at 18 n.7. According to the majority, merely being a Government agent, without more, suffices to establish that all of the *actions* of that agent are "under color" of the office of a federal officer. That sweeping proposition is inconsistent with basic principles of agency law and with common sense. As *Chevron* recognizes, the plain text of § 1442(a)(1) imposes two separate requirements on this score, and the majority has no authority to simply airbrush one of them out of the statute.

Moreover, by wrongly eliminating this crucial element of the required nexus between the acts and the federal officer's office, the majority also contravenes the Supreme Court's decision in *Watson*. Although the Court there framed its discussion as whether, in taking the specific acts at issue, the defendants were "acting under" a federal officer, the various factors the Court identified in making that determination necessarily apply to whether a defendant's relevant *acts* were "under color" of the federal officer's authority. 551 U.S. at 151–52. That is why neither *Watson* nor *Chevron* stated that agency alone is sufficient to satisfy § 1442(a)(1). On the contrary, in determining whether a sufficient nexus with a federal officer has been shown, we said in *Chevron* that "*[a]mong other things*, [we] consider[] whether the person is acting on behalf of the officer in a manner akin to an agency relationship." *Chevron*, 32 F.4th at 756 (emphasis added). The additional factors to be considered, beyond agency, include: (1) "whether the person is subject to the officer's close direction"; (2) "whether the private person is assisting the federal officer in fulfilling 'basic governmental tasks' that 'the Government itself

would have had to perform'"; and (3) "whether the private person's activity is so closely related to the government's implementation of its federal duties that the private person faces 'a significant risk of state-court "prejudice."'" *Id.* at 756–57 (quoting *Watson*, 551 U.S. at 153–54). The majority acknowledges that this multi-factor analysis is required by the Supreme Court's opinion in *Watson*, but the majority then effectively declines to follow it. *See* Opin. at 15–16 & n.5. The majority attempts to reconcile its disregard of *Watson* by suggesting that *Watson*'s additional factors only apply if the defendant is not an agent of the Government. *See* Opin. at 15–16. But that is not a fair reading of the opinions in *Watson* or *Chevron* and, as I have explained, that reading rests on flawed substantive premises concerning agency law and the requirements of § 1442(a)(1).

Building on all of these errors, the majority then announces that the only remaining nexus requirement is to show that "the challenged acts occurred *because of* what they were asked to do by the Government." Opin. at 16 (quoting *Goncalves*, 865 F.3d at 1245 (further quotation marks and citation omitted)). But this nexus requirement pertains to the relationship between the removing party's challenged actions *and the plaintiff's claims*. *See Goncalves*, 865 F.3d at 1245; *see also Chevron*, 32 F.4th at 755. That does not suffice to establish the separate nexus requirement that a defendant's challenged actions must have been "under color" of a federal officer's office. Any suggestion that *that* requirement is satisfied by a showing of mere but-for causation—*i.e.*, that the acts never would have occurred absent the Government contract—is absurd. Under that theory, a contractor who defrauds the Government itself would be said to be acting "under color" of a federal officer's

office.[6]  And in this case, the majority's analysis leads to the astonishing conclusion that a federal contractor's actions in allegedly fraudulently recruiting its employees are "under color" of a federal officer's office, and that, in taking those fraudulent actions, the federal contractor is "acting under" a federal officer.  This is all quite wrong.[7]

Finally, the implications of the majority's errors are significant.  Under today's opinion, it is difficult to see how

---

[6] In addition, there is the further problem that, except for pointing to the "Combatant Commander" in Defendants' (inadequately pleaded) contract-based defense, the removal notice never identifies any "officer . . . of the United States or of any agency thereof" under whom Defendants acted.   28 U.S.C. § 1442(a)(1).   Instead, Defendants' removal notice only more vaguely asserted that Defendants had been "acting under federal authority by performing security services according to United States military directives."  The majority says that that is enough, *see* Opin. at 20 n.9, but that is wrong.  *See supra* section II(A).

[7] The majority claims that the approach I have set forth improperly takes the guards' view of the merits of the case, in contravention of *Jefferson County*'s statement that we must "credit" the removing party's "theory of the case" for purposes of the jurisdictional inquiry.  *See* Opin. at 18 n.7 (quoting 527 U.S. at 432).  But what we must credit under *Jefferson County* (at least in a facial challenge) is the removal notice's well-pleaded allegations supporting the asserted "colorable federal defense" and the claimed "'causal connection' between the *charged conduct* and asserted official authority."   527 U.S. at 431–32 (emphasis added) (citation omitted).  Nothing in *Jefferson County* requires us, in assessing jurisdiction, to go further and to assume (as the majority apparently would have it) that the "charged conduct" never even occurred.  Here, Defendants have not pleaded *any* facts sufficient to establish that their alleged conduct of lying to prospective recruits was taken "under color" of a federal officer's office (nor have they pleaded any colorable federal defense to *that* charged conduct).  Yet, under the majority's but-for-causation test, such fraudulent recruitment counts as having been taken "under color" of a federal officer's office.  That makes no sense.

any significant federal contractor with a colorable federal defense would *not* qualify for federal officer removal under § 1442. So long as a private federal contractor is subject to "overall" federal supervision by an agency or an officer and has a non-frivolous federal defense, it may leapfrog directly into federal court when faced with, say, an ordinary state-law employment dispute with its employees, a tort suit for negligence, or a contract dispute with a subcontractor. That is not the law.

I respectfully dissent.